No. 54,124

STATE OF KANSAS, *Appellee*, v. LARRY STELLWAGEN, *Appellant.*

(659 P.2d 167)

Opinion filed February 19, 1983.

*Larry E. Schneider*, of Topeka, argued the cause and was on the brief for the appellant.

*Joan M. Hamilton*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Gene M. Olander*, district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal by Larry Stellwagen from a jury conviction of rape (K.S.A. 21-3502) and aggravated sodomy (K.S.A. 21-3506). A previous trial had ended with a hung jury.

The facts are essentially undisputed. The evening of January 24, 1981, was a disturbing one for Larry Stellwagen. He had organized a keg party at his home, 705 Lincoln, Topeka. The party was poorly attended. He had a fight with his girl friend and he was rebuffed when he tried to pick up a woman on Eighth Street. He drove around for a time drinking beer, then upon seeing a light in the window went to the apartment of Ms. R. It was after midnight.

Stellwagen and the victim had dated a few times in May and June of 1980. They had seen each other briefly in October and appellant had given Ms. R a ride home from night class earlier in January 1981. They had not dated since June 1980.

While at Ms. R's apartment in the early morning of January 25, 1981, Stellwagen related to her his bad luck of the previous evening. The discussion continued for fifteen to twenty minutes, in the midst of which appellant took a small pistol from his pocket and placed it on the coffee table. He then asked to use the bathroom. Upon appellant's return to the living room, the victim testified, he pointed the gun at her and ordered her into the bedroom. She attempted to dissuade him. Stellwagen responded, "I'm not playing games" and repeated his order. When they reached the bedroom, appellant pointed the gun at the victim and forced her to strip. He then ordered her to perform oral sex. She became sick and stopped. When the victim hesitated to continue on Stellwagen's order, he hit her above the left ear with his gun. Appellant then ordered his victim to lie face down on the floor. He caressed her naked body and bit her. Ms. R was now crying. Appellant ordered her to perform oral sex again. This caused the victim to become ill and she vomited. Next Stellwagen pushed the barrel of his gun up the victim's anus. She became scared and tried to resist. Stellwagen slapped her and ordered her back on the floor where with the gun in hand he had sexual intercourse with her. All the activity had occurred on the floor of the bedroom. They then proceeded to the living room where Stellwagen remarked, "You can call them anytime, I won't be mad." Appellant then left.

Stellwagen testified he does not remember what happened from the time he returned from the bathroom until he was in his car driving home, a period he estimated to be fifteen minutes. Appellant testified he drank almost two gallons of beer that evening and felt totally drunk at the apartment. However, he remembered all of the other events of the evening, going to Ms. R's apartment, talking to her, putting his coat on, placing the gun in his pocket and leaving. Later events cast doubt on his story.

A few minutes after Stellwagen left, the victim called David Gordon, who came over. She was quite distressed and related the sordid events of the early morning to him. Ms. R's fourteen-year-old son, John, arrived home from work soon thereafter. He

was not told what had occurred; Ms. R was fearful John would overreact and get hurt. For this reason she did not call the police. John went directly to his room. At about 2:30 a.m. Stellwagen again showed up at Ms. R's door. He had a young companion. They were both armed. She admitted them upon Gordon's assurance he would protect her. Stellwagen apologized to the victim for what he had done and suggested she might as well turn him in and get him off the street. The two then left. Appellant admits he made the second trip to Ms. R's apartment but denies he made the statements, maintaining instead that he returned to check if the victim's son had arrived home. David Gordon remained for a short time after Stellwagen and his friend left.

Because of her apprehensions the victim and her son moved from the apartment the next day and did not return. Ms. R discussed the events of the previous night with two members of her church, William Rider and Betty Lister. Ms. Lister told the minister, Eldon Walker, of Ms. R's experience. He advised the victim to report the offense to the police. Ms. R finally agreed and on January 27 permitted Ms. Lister to call the police. A complaint was then filed.

Detective Duane Cochran testified Stellwagen confessed the accusations against him made by Ms. R "may be true." In fact Stellwagen failed to dispute the substance of the complaint. His defense was a total loss of memory for the crucial fifteen minutes and a claim that he could not have committed such crimes because he is a nonviolent person. In a pretrial motion he asserted if sexual relations occurred between him and Ms. R, it had to be consensual. Appellant filed an affidavit stating he and the victim had prior sexual relations in May and June of 1980. He further stated part of those occurrences were in response to the victim telling him she fantasized about being raped and he assisted her in fulfilling her fantasy. Stellwagen sought to introduce evidence and cross-examine the victim about that prior sexual experience. The evidence was excluded for remoteness and irrelevancy.

For his first issue on appeal Stellwagen contends excluding the evidence of previous sexual experience between him and the victim is reversible error since it would imply consent by the victim. His motion was pursuant to K.S.A. 60-447a, the rape shield act, which provides in pertinent part:

"(1) Except as otherwise provided in subsection (2), in any prosecution for the crime of rape, as defined by K.S.A. 21-3502, or for aggravated assault with intent to commit rape, as provided in K.S.A. 21-3410, or for an attempt to commit rape, as provided in K.S.A. 21-3301, or for conspiracy to commit rape, as provided in K.S.A. 21-3302, evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, nor shall any reference be made thereto in the presence of the jury, except under the following conditions: A written motion by the defendant shall be made at least seven days before the commencement of the trial to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The seven-day notice required herein may be waived by the court. The motion shall state the nature of such evidence or testimony and the relevancy thereof, and shall be accompanied by an affidavit in which an offer of proof of such previous sexual conduct of the complaining witness is stated. The court shall conduct a hearing on the motion in camera. At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the previous sexual conduct of the complaining witness is relevant and is not otherwise inadmissible as evidence, the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted. The defendant may then offer evidence and question witnesses in accordance with the order of the court."

In the rape shield act the legislature sent a clear message to the courts that a rape victim's prior sexual activity is generally inadmissible since prior sexual activity, even with the accused, does not of itself imply consent to the act complained of. In saying this the legislature was attempting to further the strong state interest in protecting the rape victim. The act withstood constitutional challenge in *State v. Blue*, 225 Kan. 576, 580, 592 P.2d 897 (1979), and *In re Nichols*, 2 Kan. App. 2d 431, 580 P.2d 1370, *rev. denied* 225 Kan. 844 (1978).

K.S.A. 60-447a provides a procedure to assist the trial court in determining relevancy of a contention of a rape victim's prior sexual activity. On review the trial court's ruling should stand absent a showing of abuse of discretion. *In re Nichols*, at 433. We have held discretion is abused only when no reasonable person would take the position adopted by the trial court. Here the trial court considered the proffered evidence of the appellant and found it irrelevant to the issue of consent because of remoteness. In light of the evidence in the instant case we cannot say there was abuse of discretion.

Appellant also argues the exclusion of the evidence of prior sexual acts denied him his Sixth Amendment rights to elicit

evidence in his defense. It is also without merit. The Sixth Amendment ensures a defendant the right to present relevant evidence in his behalf. Here the evidence was ruled irrelevant. As such the suppression does not offend appellant's Sixth Amendment rights.

Appellant next contends the trial court erred in granting the State's motion in limine prohibiting mention of the bed sheets taken from the victim's bedroom for laboratory tests. We enunciated the standard for granting such motions in *State v. Quick,* 226 Kan. 308, 311, 597 P.2d 1108 (1979):

"(1) The material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer of or statements made during trial concerning the material will tend to prejudice the jury."

The trial court followed the foregoing test and ruled the evidence concerning the sheets had no probative value since the offense charged occurred on the floor and not on the bed from which the sheets were removed. It also found the evidence prejudicial to the State because the victim would be forced to explain foreign pubic hair found thereon. We find no error.

Appellant next argues the trial court erred in denying his motion for a mistrial when facts underlying a pending charge involving a knife were mentioned at trial. The charge itself was not mentioned. The appellant had testified he was not a violent person, therefore he was incapable of committing the offenses with which he was charged. On cross-examination the following transpired:

(Questions by Mrs. Hamilton.)
"Q. And you indicate that you're not a violent person?
"A. Not basically.
"Q. Well, what's not basically mean?
"A. I can defend myself if I have to.
"Q. Do you carry weapons all the time?
"A. No, only if I feel the need, and it takes a lot for me to feel that need.
"Q. Well, how often do you feel that need?
"A. Just that one time.
"Q. Just that one time?
"A. Yes.
"Q. You've never carried a knife?
"A. I carried a knife for awhile, but not as a weapon.
"Q. And when did you carry the knife?
"A. It was after I got my motorcycle, about September.
"Q. Of what year?

"A.  Of this year.
"Q.  Of this year?
"A.  1981.
"Q.  And you don't carry the knife as a weapon?
"A.  No.
"Q.  What purpose do you carry it?
"A.  For working on the motorcycle, cutting wires. It had a flat point and I use it for a screwdriver.
"Q.  That's the only time you've ever used that knife?
"A.  Yes—well, not really, but that gets into something else.
"Q.  Well, you indicated you're not a violent person.
"A.  I'm not.
"Q.  Have you used that knife for other than motorcycle riding?
"A.  To defend myself one time.
"Q.  On a person?
"A.  Yes.
"Q.  Have you ever slapped a woman besides Ms. R?
"A.  A long time ago when I was seventeen.
"Q.  So you've never—you've never slapped your present wife?
"A.  No.
"Q.  You've never used any violence on her?
"A.  No.
"Q.  Never forced her to do anything?
"A.  No."

At the time of the inquiry appellant had a pending charge of aggravated battery with a knife as the dangerous weapon. He had not been arraigned. He objected after the foregoing exchange occurred. The court sustained his objection and permitted no further questions but refused to declare a mistrial.

The prosecutor's question was not intended to attack the appellant's credibility by contradicting the appellant's claim of not being capable of sexually assaulting a woman. The intent was to prove guilt circumstantially through specific instances of the appellant's past conduct. K.S.A. 60-447 does not permit evidence of specific instances of conduct at other times to prove a character trait tending to show how the appellant acted at the time of the alleged crime. Judge Spencer Gard explained K.S.A. 60-447:

"The well known application of this section in the criminal case is as follows: The prosecution may not offer evidence of character as proof of guilt until the defendant has offered evidence of his good character as circumstantial proof that he is not guilty. If the charge is drunkenness and the defendant offers evidence of sobriety by reputation or opinion testimony the prosecution may then, and only then, offer evidence of convictions for drunkenness (but not other specific acts of drunkenness), or may offer reputation or opinion testimony to refute the charac-

ter evidence offered by the defendant, and show a propensity for drunkenness and the circumstantial probability of guilt." Gard's Kansas C. Civ. Proc. 2d Annot. § 60-447 (1979).

See *State v. Gregory*, 218 Kan. 180, 542 P.2d 1051 (1975); *State v. Mason*, 208 Kan. 39, 490 P.2d 418 (1971). A conviction on the charge would have been admissible. See *State v. Bowers*, 218 Kan. 736, 545 P.2d 303 (1976).

The State skirted perilously close to committing error. However, the trial court prevented further inquiry upon objection by appellant thereby avoiding substantial prejudice to the appellant. We have held: "The declaration of a mistrial is a matter entrusted to the trial court's discretion." *State v. Everson*, 229 Kan. 540, 543, 626 P.2d 1189 (1981), citing K.S.A. 22-3423. We hold appellant failed to show substantial prejudice, thus justifying the trial court's refusal to declare a mistrial.

Appellant next contends the weapon used during the commission of the crimes for which he was convicted was not a firearm within the meaning of K.S.A. 21-4618 because it would not fire due to malfunction. This issue does not merit further discussion. We resolved the issue in *State v. Pelzer*, 230 Kan. 780, 782, 640 P.2d 1261 (1982), where we held a firearm designed to propel a projectile is a firearm whether operable or inoperable. Appellant's handgun is a firearm.

Finally, appellant contends the sentence imposed is so arbitrary and unreasonable as to constitute an abuse of discretion. Stellwagen was sentenced to concurrent terms of fifteen to thirty years for each felony conviction in this case. The mandatory firearm statute preventing probation was also invoked. Appellant had been previously convicted of theft in 1974, causing the State to request use of the habitual criminal statute. The court refused.

This sentence is within the statutory limits. Both felonies Stellwagen was convicted of are class B felonies. K.S.A. 1982 Supp. 21-4501(*b*) sets the minimum term from five to fifteen years, and the maximum at twenty years to life. We have held when a sentence is within the statutory limits set by the legislature, it will not be disturbed on appeal in the absence of special circumstances showing an abuse of discretion. In *State v. Marks*, 231 Kan. 645, 656, 647 P.2d 1292 (1982), the defendant received two concurrent terms of ten to twenty years for the same two felonies as in this case. *Marks* represents the longest sentence

for these offenses we have found prior to this case. However, though we consider this sentence suspect of being excessive, in light of the heinous nature of the appellant's crimes and his history, we cannot say this is abuse of the trial court's discretion.

The judgment of the trial court is affirmed.