No. 56,080

STATE OF KANSAS, *Appellee*, v. DAVID A. WILLIAMS, *Appellant*.

(681 P.2d 660)

486

Opinion filed April 27, 1984.

*Jon D. Graves,* of Wichita, argued the cause and was on the brief for the appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a jury conviction for rape, K.S.A. 1983 Supp. 21-3502, and aggravated sodomy, K.S.A. 1983 Supp. 21-3506.

On April 18, 1982, the complaining witness, Ms. D, went to 1427 N. Estelle, Wichita, the residence of her friend, Mildred Adams. The appellant, David A. Williams, had been dating Mildred Adams prior to the night of the rape. Although they were not married, Ms. Adams and the appellant had a child together. Ms. D was asked to babysit with the children of Ms. Adams that evening. After the children were put to bed, Ms. D put on her nightgown, made up the couch and went to sleep. On the nights the appellant stayed in the house, Ms. Adams would sleep on the couch. The appellant would sleep on a mattress on the floor next to the couch. On the nights Ms. D visited she slept in another room. Ms. D had known the appellant for four to six years prior to this incident.

At approximately 1:20 a.m., April 19, 1982, Ms. D heard a motorcycle approach the house. She saw the appellant enter the residence. He went into the kitchen, then the bathroom and

finally returned to the living room where he undressed. He appeared to be intoxicated and smelled of beer or liquor. As the appellant approached Ms. D he inadvertently knocked the phone off a table near the couch. The victim repeatedly advised the appellant she was not the appellant's girlfriend, Mildred Adams. The appellant responded threateningly and proceeded to try to force her into submission. The victim resisted and told the appellant to release her. In the course of events, he struck her twice in the stomach and twisted her arm. During her attempts to free herself, the victim noticed the phone off the hook on the floor. She was able to reach the phone and push-dial the 911 emergency number without appellant being aware of her action.

Dispatcher Dean Speaks, with the Sedgwick County Emergency Communications Department, received the phone call from the Adams residence phone at 2:12 a.m. The dispatcher repeatedly identified himself and attempted to make contact with someone at the other end of the line, but he got no response. He heard a female voice screaming in the background. The 911 emergency number has an automatic number identification system which displays the calling party's telephone number to the dispatcher on duty. The 911 system also automatically records all communications on that line, as well as other incoming and outgoing calls and radio traffic, on a forty-channel dual reel tape recorder. Dispatcher Speaks monitored the noises and conversations he heard from the Adams residence for a half hour and used a cross-reference directory to obtain the address of the phone number. A Cessna Drive address which he obtained from the directory proved to be incorrect. Police were dispatched to the incorrect address only to find no disturbance. The dispatcher then contacted a telephone company supervisor and traced the phone call to the correct address. The cassette tape recording, introduced as State's Exhibit No. 12, contains the conversations, screams and other noises heard by the dispatcher during the thirty minutes he monitored the line. Dispatcher Speaks identified the exhibit as an accurate reproduction of the conversation he had monitored. Two other dispatchers testified they were responsible for duplicating the original communications from the forty-channel master reel to the cassette tape.

During the course of the victim's ordeal on the couch and the mattress, the appellant effected penetration and forced her to

perform oral sex upon him. The appellant threatened the victim physically. She testified she submitted without physically striking him or hurting him since she was aware of the past physical abuse he had inflicted on Mildred Adams. The police eventually arrived. The appellant approached the door and tried to persuade them nothing was wrong. Upon hearing the victim's screams for help, they kicked in the door and entered. The door struck appellant and he was immediately apprehended, dressed only in his socks. The police testified the victim was hysterical.

The victim was then taken to the hospital for a physical examination. The lab reports of the rape kit examination failed to show the presence of spermatozoa within her vaginal fluids. This corroborated the victim's testimony that she did not believe the appellant reached ejaculation. Her only physically observable injury was some bleeding from her cervix. Williams was tried to a jury and found guilty of rape and aggravated sodomy.

The appellant first argues the trial court erred in excluding evidence of previous sexual conduct of the victim. The appellant at trial sought to cross-examine the victim concerning one incident of prior consensual sexual conduct with him. The incident allegedly occurred sometime in 1980, in the Texaco Motel on 53rd Street in Wichita. Kansas statute allows such evidence under certain circumstances after specific requirements have been complied with. This statute, 1983 Supp. 21-3525(2), the rape shield statute, provides:

"(2) Except as provided in subsection (3), in any prosecution to which this section applies, evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, and no reference shall be made thereto in the presence of the jury, except under the following conditions: The defendant shall make a written motion to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The motion must be made at least seven days before the commencement of the trial unless that requirement is waived by the court. The motion shall state the nature of such evidence or testimony and its relevancy and shall be accompanied by an affidavit in which an offer of proof of the previous sexual conduct of the complaining witness is stated. The court shall conduct a hearing on the motion in camera. At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the previous sexual conduct of the complaining witness is relevant and is not otherwise inadmissible as evidence, the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted. The defendant may then offer evidence and question witnesses in accordance with the order of the court."

In the instant case, a notice was filed four months prior to trial. The notice was defective since it was not accompanied by the required affidavit and did not set forth an offer of proof as to the details of the prior incident. The notice merely stated: "[T]he defendant intends to offer to the Court for admission into evidence testimony concerning the previous sexual conduct of the complaining witness with the defendant." The first day of trial appellant provided the omitted details under oath. The trial court ruled this was sufficient to comply with the statute; however, it would not allow the evidence to be admitted because it was too remote and immaterial and thus inadmissible. The court informed the appellant, who was acting as co-counsel with his court-appointed attorney, that he could raise the issue only if he took the stand. The purpose of this was to protect the victim from attempts to cross-examine her on the issue. The court articulated the prejudice which would result to the victim if questioned along these lines even if she denied the allegations. The trial judge also informed the appellant if he took the stand to offer such evidence he would thereby waive his privilege against self-incrimination and be subject to cross-examination concerning the rape charge.

Appellant's counsel argues these orders constitute error in two ways. First, appellant argues the evidence was material and therefore unconditionally admissible. Second, appellant alleges the court misinformed him as to the scope of the State's cross-examination if his direct testimony concerned only the prior sexual conduct.

As to the first point, the evidence, although material as appellant indicates, was irrelevant because it was too remote. Thus, it was inadmissible. See *State v. Stellwagen,* 232 Kan. 744, 659 P.2d 167 (1983), and *In re Nichols,* 2 Kan. App. 2d 431, 580 P.2d 1370, *rev. denied* 225 Kan. 844 (1978). The court's ruling, however, did not specifically disallow the evidence. The court merely held it appeared too remote and gave the appellant the opportunity to present the evidence at an appropriate time. The appellant chose not to do so. We find no error.

The appellant also argued the court instructed him erroneously as to the scope of cross-examination. The appellant wanted to testify as to the prior conduct only. The judge warned he could be cross-examined on details of the charged rape if he took the

stand. The State argues this is harmless error, since the appellant did not take the stand to testify. Appellant responds that he would have taken the stand but the court's ruling put an improper chilling effect on his rights, which he was then afraid to exercise. We have examined the court's ruling and find no error. The trial court correctly stated the taking of the witness stand by appellant would have subjected him to cross-examination concerning the charged offense.

Appellant next argues the trial court erred in admitting into evidence the tape recording of calls to the emergency communication center on the night of the rape. A dispatcher with the Sedgwick County Communication Center testified he received an emergency call at 2:12 a.m. The dispatcher repeatedly identified himself, without receiving a response, although he could hear a woman screaming and crying. For the next thirty minutes the police department attempted to locate the address from which the call was coming. During this time the call was being recorded by the emergency communication center's automatic recording equipment. The call ended when the police located the origin of the call and answered the victim's cries for help.

At trial the State entered into evidence, over appellant's objection, a cassette recording of the call. Appellant argues on appeal the trial court erred in admitting the tape recording because there was insufficient foundation for its admission and it was gruesome—designed to prejudice the appellant without any probative value.

The foundation objections stem from one main fact. The call was recorded automatically onto a forty-channel reel-to-reel tape as it occurred. This master tape used to record the phone call was re-recorded onto a cassette tape. Through inadvertence, the master tape was then erased and reused. While this is the policy of the emergency communication department, when calls are to be used as evidence in a case the master tape is usually preserved. Both the master and re-recorded cassette tapes are then entered into evidence. This resolves any question as to the accuracy of the re-recorded tape. In this case, however, since the master tape was destroyed, only the re-recorded cassette tape was offered as evidence. There are several portions of the cassette tape where it is difficult to understand what the parties were saying as well as several clicks and portions where no

sound is heard. Since the master tape is unavailable for comparison, appellant's foundation questions stem substantially from the missing master tape.

Initially, appellant cites the foundation requirements for admission of a tape recording in most jurisdictions. These are as follows:

"The cases are in general agreement as to what constitutes a proper foundation for the admission of a sound recording, and indicate a reasonably strict adherence to the rules prescribed for testing the admissibility of recordings, which have been outlined as follows: (1) a showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement." 29 Am. Jur. 2d, Evidence § 436, pp. 494-95.

While Kansas cases vary in terms of what has been found to be sufficient foundation for the admission of recordings into evidence, all cases agree the matter is within the discretion of the trial court. See *State v. Poulos & Perez,* 230 Kan. 512, 639 P.2d 477 (1982); *State v. Treadwell,* 223 Kan. 577, 575 P.2d 550 (1978); *State v. Wilson,* 220 Kan. 341, 552 P.2d 931 (1976); *State v. Hill,* 211 Kan. 287, 507 P.2d 342 (1973).

Appellant cites several problems with the foundation in the instant case. The competency of the operators, appellant argues, was not established by the State. There was, however, testimony the dispatchers were familiar with the recording and re-recording equipment; had worked with this equipment for a substantial period of time; and had re-recorded calls from a master tape to a cassette on previous occasions. There is no doubt the operators were competent.

The authenticity and correctness of the recording are also alleged not to have been proven. This challenge is based upon the testimony that none of those responsible for the re-recording of the cassette compared the cassette to the master tape. The operators testified they listened and monitored the recording as it occurred. The re-recording was made by use of a patch cord with a split to allow the operators to listen. This technique results in the operators hearing exactly the same thing as the cassette tape. Such monitoring precludes the need to listen to the cassette and master tapes side by side when the recording is

done. Also, one of the operators and the dispatcher on duty who took the call both testified the cassette was an accurate copy of the master tape. We hold there was sufficient evidence to prove the authenticity and correctness of the cassette tape.

Appellant next contends the State failed to meet its obligation to identify the principal speakers on the recording. To the contrary, the victim identified the appellant's voice as well as her own and the dispatcher identified his voice. They were the only principal speakers. Although other voices appear on the tape transmitting information concerning the case, those individuals were not principal speakers and, therefore, need not be identified.

It is also charged there was insufficient evidence of a proper chain of custody of the tape. The chain of custody requirements have been set forth by this court in *State v. Treadwell,* 223 Kan. 577, Syl. ¶ 2, as follows:

"When objects of physical evidence have been kept in police custody the chain of possession must be reasonably complete, but this rule may be relaxed when the object is positively identified at the trial and it is established the object remains unaltered."

One of the persons responsible for recording the tape testified he gave the tape to a Detective Davenport. The other operator corroborated this. At trial, the operators both positively identified the cassette as the one made from the master tape. The dispatcher testified the recording was accurate. We find the chain of custody requirements were met.

It is next argued the tape should not have been admitted due to portions which appellant contends are "inaudible." There are several portions of the tape in which it is difficult to understand exactly what is being said. In *State v. Wilson,* 220 Kan. 341, 347, we held:

"When the authenticity of audio and tape recordings of a statement made by the defendant is established to the satisfaction of the trial court and found to be of sufficient clarity and quality to assist the jury in its deliberations they may be admitted in evidence even though portions thereof may not be first quality reproductions of what was said and done."

In the instant case the court did not listen to the tape prior to the jury, thus, the court could not exercise its discretion to determine whether the portions which are difficult to understand rendered the recording inadmissible. However, the trial

judge ruled he did not need to listen to the tape, since there was sufficient testimony the recording was of the rape as it actually occurred. We agree. The ruling is proper since there was adequate testimony that the recording was accurate.

Appellant finally argues on this issue the recording was so gruesome it was more prejudicial than probative. This argument is without merit. The recording went to the very heart of the case showing the victim's lack of consent, that her resistance was overcome by force or fear, and that the sexual assault occurred. The tape also corroborates the testimony of several witnesses, including the victim. The tape is not inadmissible because it is gruesome and shocking. It is a true reproduction of a gruesome, shocking event. The fact the recording reflects this may not be used by appellant to exclude such evidence as "prejudicial." It was prejudicial as is all evidence against the accused in criminal actions. That is its purpose. It is only when such prejudicial evidence has little probative value that it is excluded. Here its probative value was strong. The tape recording was properly admitted.

Appellant next argues the trial court erred in refusing to instruct on ignorance or mistake of fact and on the lesser offense of attempted rape. At trial appellant requested both instructions be given. The judge denied both requests. The general rule regarding instructions is the trial court must instruct the jury on the law applicable to the theories of both sides of the case where there is evidence to support each theory. *State v. Haynes,* 5 Kan. App. 2d 144, Syl. ¶ 2, 612 P.2d 1268 (1980).

Appellant argues the instruction on ignorance or mistake of fact was proper because the victim testified she and the appellant's girlfriend resembled each other and since the appellant's girlfriend usually slept on the couch where the victim was sleeping. Hence, appellant contends a reasonable jury might have found appellant mistook the complaining witness for his girlfriend. The bulk of the evidence, however, was to the contrary.

The appellant was advised shortly before he went to his girlfriend's residence that she was in jail, unable to make bond. The appellant refused to help her make bond. The appellant inquired as to who would be watching the children while his girlfriend was in jail. He was advised Ms. D, the victim, would

babysit. After he arrived at the house and approached the victim, she advised him she was not his girlfriend. The appellant told the victim he was going to have intercourse with her because the victim's boyfriend had allegedly tried to have intercourse with the appellant's girlfriend. No rational factfinder could have believed Williams mistook the victim for his girlfriend.

Additionally, the testimony massively supported the State's theory that the sexual acts were forcible and nonconsensual. Even if the victim had been the appellant's girlfriend, appellant's acts would have constituted rape. The point is without merit.

The appellant also argues the trial court erred in refusing to instruct on attempt. Appellant claims the instruction is warranted since he attempted intercourse on the couch and again on the mattress next to the couch, but was able to consummate the act only when on the mattress. Since the State failed to specify whether the appellant was charged with the rape on the couch or on the mattress, appellant feels the attempt instruction is required. This argument presumes the appellant could have been charged for separate acts of rape against the same victim within a lapse of a few minutes and a distance of a few feet to separate the acts. The law is to the contrary. This court has held the prosecution may not split a single offense into separate charges. See *State v. Dorsey*, 224 Kan. 152, 578 P.2d 261 (1978). In *Dorsey* this court held the difference between the three rape charges was a lapse of a few minutes between each alleged offense. Under those facts, this court held there was only one crime under the rape theory and thus vacated the convictions on the multiplicitous counts. In the instant case, therefore, the jury could not find the appellant guilty of attempted rape on the couch if they found he subsequently completed the crime on the mattress. The entire half hour of events can be charged as one count of rape and one count of aggravated sodomy.

The appellant would be entitled to an attempt instruction only if there was some evidence to show the crime was not completed. The duty to instruct on lesser included offenses arises only if there is evidence under which the appellant might reasonably have been convicted of the lesser crime. See *State v. Everson*, 229 Kan. 540, 542, 626 P.2d 1189 (1981). The only evidence in this case was of the completed act of rape and

aggravated sodomy. An instruction on attempt would have been improper.

Appellant next maintains the trial court erred in ruling it lacked jurisdiction to hear appellant's motion to modify sentence, since the notice of appeal had been filed. Appellant claims this was error since the docketing statements were not yet filed. This court addressed this issue in *State v. Dedman*, 230 Kan. 793, 640 P.2d 1266 (1982). Appellant cites *Dedman* for authority that the mere filing of a notice of appeal is not sufficient to take away the trial court's jurisdiction to hear the motion to modify sentence until the docketing statements are filed. Appellant quotes the court as saying:

"When an appeal is docketed, the trial court's jurisdiction ends and the sentence may then be modified only after the mandate from the Supreme Court or Court of Appeals is returned, or by motion to remand temporarily for modification of the sentence." 230 Kan. at 793, Syl. ¶ 2.

The State responds that although the syllabus used the word "docketed," later in the opinion the court indicates an application for modification of sentence may not be entered while the appeal is "pending." The court's rationale in *Dedman* supports the argument that the trial court loses jurisdiction over the case with the filing of the notice of appeal:

"It is important to note that here the sentence itself was appealed from. Its correctness is thus before this court. The foregoing rule allows the sentence to become crystallized so it may, indeed, be subject to appellate review or modification. In addition, we deem it better policy to have jurisdiction of a criminal action repose in only one court at a time to prevent a case from getting lost in the system." 230 Kan. at 797.

The issue of excessive sentencing is on appeal here. Upon the filing of the notice of appeal, the trial court loses its jurisdiction to hear any motions to modify the sentence. We adhere to *Dedman*.

The fifth issue raised is that the trial court abused its discretion in sentencing appellant. Appellant was found guilty of one count of rape and one count of aggravated sodomy. For these convictions he received two terms of fifteen years to life, which sentences were to run concurrently.

Appellant argues the excessiveness of these sentences based upon a comparison to another rape case, *State v. Stellwagen*, 232 Kan. 744. *Stellwagen* received concurrent fifteen to thirty year

sentences for his convictions for rape and aggravated sodomy. The facts in *Stellwagen* were without a doubt brutal. The defendant raped the victim and pushed the barrel of his gun up her anus. In *Stellwagen* the court stated:

"We have held when a sentence is within the statutory limits set by the legislature, it will not be disturbed on appeal in the absence of special circumstances showing an abuse of discretion. In *State v. Marks*, 231 Kan. 645, 656, 647 P.2d 1292 (1982), the defendant received two concurrent terms of ten to twenty years for the same two felonies as in this case. *Marks* represents the longest sentence for these offenses we have found prior to this case. However, though we consider this sentence suspect of being excessive, in light of the heinous nature of the appellant's crimes and his history, we cannot say this is abuse of the trial court's discretion." 232 Kan. at 750-51.

The sentences in this case are within the statutory limits; thus, we must determine if there are any special circumstances showing an abuse of discretion. The appellant cites the fact he did not use a gun to perpetrate the crime and the State's failure to request the imposition of the habitual criminal act. While the sentences imposed here are much longer than those in *Stellwagen* and *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982), the evidence shows the force and fear used in the instant crime, especially as evidenced by the tape recording, were substantial. There is no showing of abuse of discretion. The sentences are not impermissibly excessive.

Appellant's final argument is that the cumulative effect of the trial errors noted in his brief requires reversal. In *State v. Gammill*, 2 Kan. App. 2d 627, 633, 585 P.2d 1074 (1978), the court held several trial errors when considered collectively were so great as to require reversal of that defendant's conviction. The test enunciated was whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. The errors alleged in this case have all been independently shown to be without merit. Additionally, the evidence of guilt, including the corroboration found in the cassette tape, was overwhelming. No prejudicial error may be found upon the cumulative effect rule if the evidence is overwhelming against the defendant. See, *e.g., State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976). Due to the overwhelming nature of the evidence in this case, the alleged errors when considered collectively do not require reversal. The judgment of the trial court is affirmed.

LOCKETT, J., not participating.