(841 P.2d 1111)

No. 67,473'

STATE OF KANSAS, *Appellee,* v. JANETTE G. CRAMER, *Appellant.*

Opinion filed November 20, 1992. ▮

*M. Kristine Paredes,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for the appellant.

*Ricklin R. Pierce,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before LEWIS, P.J., ELLIOTT, J., and STEPHEN D. HILL, District Judge, assigned.

LEWIS, J.: Defendant Janette G. Cramer appeals her jury conviction of involuntary manslaughter. Defendant was sentenced to a term of three to five years' incarceration and was denied probation under K.S.A. 1991 Supp. 21-4618. She also appeals her sentence.

This is a case of an abused wife who terminated her marriage and any future abuse by fatally shooting her husband. Prior to the night of the shooting, defendant's life with the victim appears to have been one of abuse and pain.

Defendant and William Cramer were married in July 1987. The record indicates that William first began to beat defendant nine days prior to their wedding and that he continued to beat her on a regular basis up to the time of his death. It would serve little good to recite the details of all of the beatings inflicted by William on defendant. The record shows that there were many, that they were regular, and that they were accompanied by verbal abuse as well. Some of these beatings were so violent that defendant was hospitalized as a result. On one occasion, William picked defendant up and attempted to "hang" her on a nail protruding from a wall. The nail punctured her back and left a scar running up to her shoulder. Frequently, both parties were drinking when these violent episodes took place.

Finally, defendant sued William for divorce. She obtained a restraining order, which did not restrain William, who continued to beat and threaten her. After one of these beatings put defendant in the hospital, a friend gave her a handgun for protection. It is noted that, on the night of William's death, defendant placed the handgun in a strategic position in her house.

On the evening of William's death, he came to defendant's home with her permission. He came to discuss their divorce and brought along a supply of beer and liquor. The two parties apparently sat down at the table and began to drink and discuss the terms of their divorce. As the evening wore on, William became more angry and, finally, began to pound on the table. He started to verbally abuse defendant and stood up and stepped towards her. According to defendant, she got up and retrieved the handgun from where she had placed it. She pointed the gun at William and said, "[You're not] going to beat on me again." William apparently laughed, took one step forward, and defendant shot him in the chest. William was either dead on arrival at the hospital or died shortly thereafter. According to the postmortem reports, the bullet wound was not necessarily fatal but, as a result of that gunshot, William bled to death.

Defendant was charged with second-degree murder. Her defense was self-defense, based on the battered woman's syndrome. After a three-day trial, the jury returned a verdict, finding her guilty of involuntary manslaughter.

At her sentencing, defendant argued that to deny her probation amounted to "manifest injustice" under K.S.A. 1991 Supp. 21-4618(3). After listening to defendant's arguments, the trial court denied her probation because of her use of a firearm and the provisions of K.S.A. 21-4618(1) and (2).

She appeals her conviction and sentence. After careful consideration, we affirm on both counts.

## SPECIFIC INSTANCES OF PAST CONDUCT

Defendant argues that the trial court erred in admitting evidence of specific instances of past conduct between defendant and third parties. This evidence was not complimentary to defendant and may have been prejudicial. The trial court determined that, despite its potential prejudice, the evidence was admissible. We agree with that conclusion.

In order to prove her battered woman's syndrome defense, defendant introduced the expert testimony of Dr. Stephen E. Peterson, a psychiatrist at the Menninger Clinic. He testified that, in his opinion, defendant was suffering from the battered woman's syndrome. He reached this diagnosis after a two-day examination of defendant. As a result of that examination, Dr. Peterson prepared an extensive report that gave specific details about defendant's past life and experiences. A portion of this report described several instances of violent conduct between defendant and other parties.

The State of Kansas countered Dr. Peterson's testimony by introducing testimony of Dr. Alice Brill. Dr. Brill is also a psychiatrist, and she testified that, in her opinion, defendant did not suffer from the battered woman's syndrome. Dr. Brill's opinion was based in large part on the evidence of specific instances of past conduct, to which defendant objects.

Defendant's argument is that the evidence was so prejudicial that it should not have been admitted.

The State argues that the evidence was probative and admissible. It points out that much of the evidence came in as a result

of the cross-examination of Dr. Peterson. Basically, the State argues that this testimony was admissible to rebut the diagnosis of the battered woman's syndrome testified to by Dr. Peterson.

Defendant is particularly aggrieved by the testimony of Melvin Fox. A recounting of his testimony will serve to illustrate the type of evidence to which defendant objects. Fox was called as a rebuttal witness by the State of Kansas. He testified that he had had a relationship of sorts with defendant. He described in graphic detail one occasion when he was in the bathroom, throwing up after a drinking spree. He testified that, while he was in this rather vulnerable state, defendant entered the bathroom wearing only steel-toed biker boots and proceeded to kick him several times.

Dr. Brill referred to the incident described by Fox in support of her opinion that defendant was not suffering from the battered woman's syndrome. Dr. Brill used other instances involving defendant and third parties in stating that defendant did not suffer from the battered woman's syndrome. Defendant insists that the testimony of Fox and the use of other instances of her past conduct were intended to prejudice the jury against her.

The admission of evidence is always subject to the discretion of the trial court. *State v. Davis,* 213 Kan. 54, 57, 515 P.2d 802 (1973). In order to reverse defendant's conviction, we must conclude that the trial court abused its discretion:

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" *State v. Wagner,* 248 Kan. 240, 242, 807 P.2d 139 (1991).

In this instance, we find no abuse of discretion in admitting the evidence under discussion.

Testimony concerning the specific instances complained of by defendant was elicited by the State in an effort to cast doubt upon Dr. Peterson's diagnosis of the battered woman's syndrome. On cross-examination, Dr. Peterson was cross-examined about an incident at a wedding party where defendant physically fought

with another woman. Another incident concerned an altercation between defendant and a male bouncer at a tavern.

Dr. Brill, the State's expert witness, referred to these incidents as inconsistent with those characteristics associated with the battered woman's syndrome.

Defendant asserts that this case is analogous to *State v. Stellwagen*, 232 Kan. 744, 659 P.2d 167 (1983). We do not agree. *Stellwagen* concerned the rape shield act and held that a rape victim's prior sexual activity is generally inadmissible because prior sexual activity, even with the accused, does not imply consent. In the instant matter, the acts complained of are those of defendant, not the victim. The rape shield act is an attempt to "further the strong state interest in protecting the rape victim." 232 Kan. at 747. We see no analogy between that case and the instant matter.

Defendant argues that the court was inconsistent in its evidentiary rulings. She points out that the court refused to admit into evidence testimony regarding William's assault on a law enforcement officer. She contends this evidence should have been admitted and cites *State v. Mason*, 208 Kan. 39, 490 P.2d 418 (1971), as support for that contention.

Defendant misreads *Mason*. *Mason* held: "Where self-defense is an issue in a homicide case, evidence of the turbulent character of the deceased is admissible. Such evidence may consist of the general reputation of the deceased in the community, *but specific instances of misconduct may be shown only by evidence of conviction of a crime.*" (Emphasis added.) 208 Kan. 39, Syl. ¶ 1. There is no evidence in this case that William was convicted of assault on a law enforcement officer. There was no error in holding this evidence to be inadmissible.

The evidence of past conduct by defendant was certainly not complimentary to her. However, defendant opened the door to such testimony by her reliance on the battered woman's syndrome as a defense. The State had every right to rebut that defense, and it did so, in part, by using specific instances of past conduct between defendant and third parties. Indeed, these specific instances were relied upon by the State's expert to support her opinion that defendant did not suffer from the battered woman's syndrome. While the evidence may have been prejudicial, it was

certainly probative to the issue at hand. The evidence complained of was proper rebuttal.

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party . . . . [I]t may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party . . . . The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice." *State v. Richard,* 235 Kan. 355, Syl. ¶ 1, 681 P.2d 612 (1984).

In the final analysis, the trial court determined that the probative value of the evidence outweighed the prejudicial effect of that evidence. This was a proper decision for the trial court, and we will not substitute our judgment for that of the trial court on this issue.

### LIMITING INSTRUCTION

Defendant contends that, if the evidence discussed in the earlier section was properly admitted, the trial court erred in failing to give the jury an instruction limiting consideration of that evidence to the question of whether defendant was suffering from the battered woman's syndrome.

Defendant contends specifically that the rationale found in *State v. Green,* 232 Kan. 116, 652 P.2d 697 (1982), is applicable to the instant matter. In that decision, the Kansas Supreme Court ruled that, where evidence was admitted solely under K.S.A. 60-455, a limiting instruction should be given.

Under K.S.A. 60-455, evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible to prove a disposition by that person to commit crime or civil wrong. However, such evidence is admissible to prove such facts as "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." When evidence is admitted to prove a material fact such as those cited above, a limiting instruction is required.

In this case, the State argues that it did not seek to present the evidence to prove any of the facts described under K.S.A. 60-455. The State says that it sought to introduce the evidence to attack the diagnosis of Dr. Peterson and that this evidence

was admissible for that purpose under K.S.A. 60-447. We agree with the State's position in this regard.

The evidence complained of was not admitted or used by the State to prove any material facts such as those described above. It was admitted to counter the expert opinion and diagnosis of Dr. Peterson and to provide support for the expert opinion of Dr. Brill. Under these circumstances, we conclude that no limiting instruction was required.

We note that no limiting instruction was proposed by defendant at trial, and she did not object to the instructions given. Ordinarily, the absence of an objection to a jury instruction precludes a party from challenging the sufficiency of such an instruction on appeal. Under these circumstances, reversible error can only be found in the event that the instruction was "clearly erroneous." *State v. DeMoss*, 244 Kan. 387, 392, 770 P.2d 441 (1989). "The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict." 244 Kan. at 392.

Under the circumstances shown, we are unable to conclude that the failure to give a limiting instruction was clearly erroneous.

## TESTIMONY OF CORROBORATING WITNESS

Defendant sought to introduce the testimony of Tricia Norton. The purpose of her testimony was to corroborate an incident in which William had beaten defendant. On this specific occasion, defendant had sought safe haven in the home of Ms. Norton.

Unfortunately, Ms. Norton could not remember the date on which defendant had come to her home. The State objected to Ms. Norton's testimony because the lack of a specific date resulted in inadequate foundation being laid for the testimony. The trial court sustained that objection, and Ms. Norton was not permitted to corroborate defendant's testimony as to this particular incident.

Our review of the record convinces us that the trial court erred in rejecting the testimony of Ms. Norton. When the record is reviewed, it is apparent that, despite Ms. Norton's faulty memory, the incident had to have taken place within a specific four-month period of time. On the whole, we believe that an adequate foun-

dation was laid for Ms. Norton's testimony and that the trial court erred in sustaining the objection of the State.

Not all errors are reversible error. "Errors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining do not require reversal when substantial justice has been done." *State v. Bell,* 239 Kan. 229, 235, 718 P.2d 628 (1986).

The incident which Ms. Norton would have described had already been described by defendant. The State had cross-examined defendant as to that incident, and a considerable amount of testimony had been developed concerning that particular beating of defendant by William. The testimony of Ms. Norton was merely cumulative to the testimony already provided by defendant. We cannot say, from our examination of the record, that the exclusion of Ms. Norton's testimony affected the substantial rights of defendant. We are unable to conclude that a different verdict would have been rendered had the jury heard Ms. Norton. The beating of defendant by William which Ms. Norton could corroborate was only one of many beatings. During the course of this trial, other corroborative witnesses testified that defendant was beaten by William. Moreover, the State's expert witness conceded that defendant was a battered woman. We conclude that the error in regard to the testimony of Ms. Norton was harmless error only and does not require a reversal of defendant's conviction.

## JURY QUESTION AND INSTRUCTIONS

The defense in this lawsuit was self-defense. This was based on the contention that defendant suffered from the battered woman's syndrome and perceived that she was protecting herself from imminent danger in shooting William.

The trial court gave a self-defense instruction from PIK Crim. 2d 54.17 as modified by recent Supreme Court decisions on the issue. We note that defendant interposed no objection to the giving of this self-defense instruction and does not appear to raise an issue in her brief as to the contents of the instruction. The self-defense instruction is not, therefore, an issue on this appeal.

After the jury had retired and begun its deliberation, it submitted a question. This question bracketed the following language

from the self-defense instruction: "Such justification requires both a belief on the part of the defendant and the *existence of facts that would persuade a reasonable person to that belief.*" The jury then asked the following question:

"Does this mean:
(1) That a reasonable person, in the same situation, would choose the same.
or
(2) That a reasonable person, would believe that she believed that was her only option.
"Need last part clarified please.

"/s/ Gilbert Widows"

After receiving the question, the trial court adjourned the trial and retired to chambers with all parties and counsel present to formulate an answer to the question. After considerable discussion on the issue, the prosecuting attorney stated: "MR. PIERCE: I would request that we answer this question by providing the jurors with the syllabus, and that would be syllabus number 5 in *State v. Stewart.*"

The narrative continues with the court asking defense counsel for his opinion:

"THE COURT: Mr. Craig.

"MR. CRAIG: I'm very concerned by the narrowness of these questions, and to say yes and yes would show that this narrowness was appropriate. What I mean is that the question that a reasonable person in the same situation would choose the same doesn't really have any support in the statute or in the—in the instruction. What it says is that it was necessary to defend herself. In other words, not that a reasonable person would have necessarily made the same choice, but that the choice was a reasonable choice.

"Also on the second question, that is a reasonable person would believe that she believed that was her only option, I'm concerned by the use of the term only option; and to say yes and yes would be to confirm that she would have to determine that this was her only option and I'm very concerned by that, because I don't [think] the instruction requires a determination that this was her only option, only that it was a reasonable option under an objective and subjective standard. *I really don't have a problem with setting out the standard that's in the syllabus that Mr. Pierce suggested.*

"THE COURT: *If that's the case and both parties want to give that instruction* I wouldn't give it out of the syllabus, but I'll give it out of page 649." (Emphasis added.)

The case discussed by the parties is *State v. Stewart*, 243 Kan. 639, 763 P.2d 572 (1988). The trial court then answered the jury's question by reading them the following language from page 649 of *State v. Stewart*:

"Our test for self-defense is a two-pronged one. We first use a subjective standard to determine whether the defendant sincerely and honestly believed it necessary to kill in order to defend. We then use an objective standard to determine whether defendant's belief was reasonable—specifically, whether a reasonable person *in defendant's circumstances* would have perceived self-defense as necessary." (Emphasis added.)

We note that the language quoted above, while taken from page 649 of the opinion, is exactly the same language which is used at Syl. ¶ 5 of the opinion.

After participating in the drafting of the answer to the jury's question, defendant now argues that the trial court erred in giving that answer and asks that we reverse the conviction as a result.

The record shows that the answer given by the trial court which defendant now claims is error was given at the joint request of the State and defendant. After the prosecuting attorney suggested the language used, defense counsel responded by saying: "I really don't have a problem with setting out the standard that's in the syllabus that Mr. Pierce suggested." We could not have a more clear-cut case of acquiescence in the giving of the answer. Indeed, defense counsel joined the State in requesting that the answer be given as suggested by the prosecuting attorney. Defendant should not be permitted to join in a request for specific language to be used in answering the jury's question and then on appeal claim that the court erred in using that language.

If the language used to answer the jury's question was erroneous, then it was error invited by defendant. "A litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal." *State v. Prouse*, 244 Kan. 292, 298-99, 767 P.2d 1308 (1989).

In *State v. Gray*, 235 Kan. 632, 635-36, 681 P.2d 669 (1984), the defendant, on appeal, complained about the failure of the trial court to give a limiting instruction:

"On this issue, it should also be pointed out that the record clearly shows that the trial court offered to give a limiting instruction and was willing to do so but did not give such an instruction because defense counsel on the

record objected to the limiting instruction. Under the circumstances, the defendant has no right to complain. The rule is well established that a litigant may not invite error and then complain of that error on appeal. [Citation omitted.]"

In this case, the trial court was invited by defendant to give the answer of which defendant now complains. Under our law, defendant may not invite the trial court to take a certain action and then raise that action as error. See *State v. Salton,* 238 Kan. 835, 837, 715 P.2d 412 (1986); *State v. Falke,* 237 Kan. 668, 682, 703 P.2d 1362 (1985); *State v. Reynolds,* 230 Kan. 532, 535-36, 639 P.2d 461 (1982).

Although we rest our decision on the fact that defendant invited error, we will briefly treat the merits of defendant's argument. Defendant argues that the trial court should have advised the jury that the objective test is whether a "reasonably prudent battered woman would have perceived self-defense as necessary." We disagree.

First of all, we fail to see how the jury could have been confused by the response given to its question. The defense in this case was self-defense, based on the battered woman's syndrome. The record is replete with evidence of repeated beatings inflicted upon defendant by William. Both expert witnesses agreed that defendant was a battered woman. To advise the jury that the objective test was "whether a reasonable person *in defendant's circumstances* would have perceived self-defense as necessary" was to advise the jury to judge defendant's conduct as that of a battered spouse. We see no other way the jury could have perceived the court's instructions and the use of the term "in defendant's circumstances." Defendant's circumstances in this case were those of a battered woman being advanced upon by her battering spouse. The instruction sufficiently advised the jury that it should consider whether a person in defendant's circumstances would perceive self-defense as necessary. We consider that to have been a proper answer to the question and one which could not possibly have confused the jury.

We have reviewed the most recent Supreme Court holdings concerning instructions where a battered spouse is defending against a charge of homicide. These decisions are *State v. Hodges,* 239 Kan. 63, 716 P.2d 563 (1986); *State v. Osbey,* 238 Kan. 280,

710 P.2d 676 (1985); and *State v. Hundley,* 236 Kan. 461, 693 P.2d 475 (1985). In addition, *State v. Stewart,* 243 Kan. 639, from which the jury's question was answered, dealt with the case of a battered spouse.

Although the Supreme Court has used language in some of these opinions to indicate an objective test of how a reasonably prudent battered woman would react, we think these utterances are dicta. We find nothing in the Supreme Court's holdings to require the use of that language in instructions used in cases of this nature. The statement on which defendant relies was first made in *State v. Hundley,* 236 Kan. 461. We note that it was not the holding of the *Hundley* case. *Hundley,* a battered woman case, held that PIK Crim. 2d 54.17 was erroneously used because it used the word "immediate" instead of "imminent." *Hundley* did not require that the instruction employ the use of the words "reasonably prudent battered woman." The Supreme Court in *Hundley* was sufficiently specific in requiring replacement of the word "immediate" with the word "imminent" in PIK Crim. 2d 54.17 and, had it believed that that instruction should employ the use of the term "reasonably prudent battered woman," we presume it would have said so. It did not. *State v. Osbey* and *State v. Hodges* were both cases in which the conviction was reversed because of the use of the word immediate instead of the word imminent in PIK Crim. 2d 54.17. Once again, the Supreme Court had an opportunity in those two decisions to require the use of the "reasonably prudent battered woman" language in PIK Crim. 2d 54.17, yet it did not do so. Although *State v. Stewart* repeats the "reasonably prudent battered woman" language, it certainly does not stand for any requirement that that language be used in an instruction. Indeed, *State v. Stewart* held that the trial court erred in giving a self-defense instruction under the circumstances shown.

In summary, our reading of the Supreme Court decisions concerning battered women reveals no requirement that a jury be advised that it must employ an objective test based on how a "reasonably prudent battered woman" would react to a threat. Indeed, to employ such language would modify the law of self-defense to be more generous to one suffering from the battered woman's syndrome than to any other defendant relying on self-

defense. The Supreme Court in *State v. Stewart* expressly disavowed any such interpretation of the law. See 243 Kan. at 648.

Under the facts shown, the trial court's answer to the jury's question correctly stated the law and was not confusing or misleading. Defendant's position on the merits of this issue is unpersuasive. Despite this belief, we rest our decision on the "invited error" doctrine.

## MANIFEST INJUSTICE

The defendant in this case was convicted of the crime of involuntary manslaughter, as defined by K.S.A. 21-3404. This crime was committed with the use of a firearm. Under these circumstances, the mandatory sentencing provisions of K.S.A. 1991 Supp. 21-4618 are applicable. This statute requires mandatory imprisonment under the circumstances shown. The trial court sentenced defendant under K.S.A. 1991 Supp. 21-4618(1) and (2) and denied her application for probation or assignment to a community corrections program. Defendant argued that the trial court erred in sentencing her in this manner.

Defendant argues that K.S.A. 1991 Supp. 21-4618(3) applied and that her sentencing amounts to manifest injustice. K.S.A. 1991 Supp. 21-4618(3) reads as follows: "The provisions of this section shall not apply to any crime committed by a person where such application would result in a manifest injustice."

It is defendant's position that, in her case, imposition of mandatory imprisonment constitutes manifest injustice.

In a very recent decision, we dealt with a similar question. Although we concluded that the term "manifest injustice" as used in the statute was not possible of exact definition, we said: "A sentence which is 'obviously unfair' or 'shocking to the conscience' accurately and permissibly characterizes one which would result in manifest injustice." *State v. Turley*, 17 Kan. App. 2d 484, Syl. ¶ 2, 840 P.2d 529 (1992).

In *Turley*, we concluded that a sentence which "shocks the conscience of the court" is manifestly unjust. This is similar to saying that, while it is difficult to define "pornography," one will most certainly know it when he or she sees it. While this may not be an entirely satisfactory definition, we believe it to be the only definition possible.

In the first instance, the sentencing court in this state is the trial court. "A sentence imposed will not be disturbed on appeal if it is within the limits prescribed by law and the realm of trial court discretion and not a result of partiality, prejudice, oppression, or corrupt motive." *State v. Brown,* 249 Kan. 698, Syl. ¶ 9, 823 P.2d 190 (1991). Our standard of review in the ordinary sentencing case is abuse of discretion. We conclude that this is the standard of review to be applied in a case of this nature together with the use of the "shocking to the conscience" philosophy.

K.S.A. 1991 Supp. 21-4618 applies in all cases unless the application would result in "manifest injustice." The legislature has not given us a definition of the term "manifest injustice." Until it does so, we hold that the determination of whether a sentence has resulted in manifest injustice must be made on a case-by-case basis under a "shocking to the conscience" consideration; that is, whether the trial court has abused its discretion by imposing a sentence which is obviously unfair and shocks the conscience of the court.

We have reviewed the record carefully in the instant matter. We conclude that the trial court considered all of the necessary sentencing factors required by statute in making its decision. After weighing these factors and taking into consideration all mitigating and aggravating circumstances, the trial court concluded that the application of K.S.A. 1991 Supp. 21-4618(1) and (2) would not result in manifest injustice. It is not our position to second-guess the trial court in matters of sentencing. The trial judge heard all of the testimony, observed the witnesses, and had the opportunity to evaluate their credibility based on personal observance. We do not have that same opportunity. The trial court is in the best position to evaluate the sentencing factors involved, and we respect the trial court's superior knowledge and its primary responsibility in pronouncing sentence.

We hold that this court will not reverse a trial court's determination on the issue of "manifest injustice" unless the sentence is "obviously unfair" or "shocking to the conscience of the court." In the instant matter, we conclude that the sentence is within statutory limits, was imposed after consideration of all of the required statutory factors, is not obviously unfair, and does not

shock our conscience. We conclude that, under the facts shown, the application of K.S.A. 1991 Supp. 21-4618(1) and (2) did not result in manifest injustice.

Affirmed.