NOT DESIGNATED FOR PUBLICATION

No. 121,057

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of K.L.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed November 22, 2019. Affirmed.

*Michael J. Nichols*, of Michael J. Nichols, P.A., of Kansas City, for appellant natural father.

*Daniel G. Obermeier*, assistant district attorney, and *Mark A. Dupree Sr.*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and SCHROEDER, JJ.

LEBEN, J.: The district court terminated Father's parental rights after seeing a video in which Father committed a sexual offense against his seven-year-old daughter. Father appeals based on a single argument—that the district court shouldn't have admitted the video into evidence because no one had directly testified about how it had been made.

But the State presented the testimony of a police detective who had seen several fairly unique objects shown in the video in Father's home. And the detective had also shown some still shots from the video and other photos from the home to the daughter; she too identified objects that were later seen in the video, including her pajamas and the fingernail polish she wore. We find no abuse of discretion in the admission of the video and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

An investigation of Father began after a person whose name wasn't revealed showed a police detective, Cot Mendez, a video on a cell phone. The source, who was allowed to maintain anonymity, told Mendez that the video showed Father and his daughter, K.L. Based on what Mendez saw on that video, he got a search warrant for Father's home.

Father answered the door when Mendez and other officers arrived. The officers seized several electronic devices, including computers, hard drives, and phones. They also took K.L. into protective custody.

The State sought child-in-need-of-care protection for K.L. and eventually sought to terminate Father's parental rights. K.S.A. 2018 Supp. 38-2269(b)(2) allows for termination when a parent's conduct toward their child is "of a physically, emotionally or sexually cruel or abusive nature."

Mendez was the State's only witness at the trial on termination of Father's parental rights. He testified about two sets of exhibits.

First, he talked about 11 photographs that had been shown to K.L. during an interview with Sunflower House, a child-advocacy center that has trained interviewers to talk with children who may have been victims of abuse. Second, he talked about a video that had been taken from one of the devices seized through the search warrant.

The photos were admitted only for the purpose of demonstrating what had been shown to the child. Mendez explained that K.L. had identified some objects in some of the photos, as well as Father and herself. Among the things she identified were:

- A tattoo on Father's stomach;

- A camouflage comforter;
- A ring on her hand;
- The fingernail polish on her fingernails; and
- A pair of her pajamas with a red sleeve.

The photos were taken from the devices seized through the warrant and included some still shots taken from the video. In some of the photos that were shown to K.L., though, she didn't identify anything in them.

The key to the case, as Father recognizes, was the video. It showed a portion of Father's body, including his stomach (with the identifiable tattoo) and penis, and two arms coming out from under a camouflage comforter. One of the hands is masturbating Father, and there's a red-sleeved pajama on the arm, a ring on the finger, and fingernail polish like what K.L. had identified in the photos. Father is heard giving instructions. As Mendez summarized, "He is yelling at her, telling her to do things a certain way. She is crying in the background. And [he] tells her that she needs to get this done."

Mendez testified that the pajama sleeve shown in the video was the same as one K.L. was wearing in a photo; that the same ring was seen in a photo and the video; that the fingernails are similarly painted; and that there's a mark on her hand that's also shown in both a photo and the video. Mendez said he had seen several of the items seen in the video, including a camouflage comforter that was in the house when Mendez was there, and Father's tattoo (which Mendez had seen when interviewing Father). Mendez also said that the video was found on several of the seized devices.

The court admitted the video over Father's objection. Based on the video, the court then terminated Father's parental rights. Father has appealed to this court, challenging the admission of the video.

ANALYSIS

Father's objection is that the foundation for admission of the video was insufficient. We review a district court's decision on evidentiary foundation requirements only for abuse of discretion. That means that its decision is upheld unless no reasonable person would agree or the decision was based on a legal or factual error. *State v. Ernesti*, 291 Kan. 54, 64-65, 239 P.3d 40 (2010).

Father argues that the district court should have applied a seven-factor test that the Kansas Supreme Court has applied to the admission of audio recordings. That test was set out in *State v. Williams*, 235 Kan. 485, 681 P.2d 660 (1984). But Father only argued about one of those factors in the district court—the "authenticity and correctness" of the photographs and video. See 235 Kan. 485, Syl. ¶ 2.

The State argues that it needed only to prove that the photos and video were what they purported to be. That's another way of talking about a test for authenticity, so ultimately both parties are talking about the same thing.

Although Father generally objects to admission of both the photos and the video, the photos were only admitted to show what K.L. had seen during her interview at Sunflower House. Whether the district court properly terminated Father's parental rights depends on whether the video was properly admitted.

Videos, like photos, are "writings" under Kansas evidence rules. See K.S.A. 60-401(m). So they must be authenticated with "evidence sufficient to sustain a finding of [their] authenticity." K.S.A. 60-464; see 3 Hayden & Mulligan, Kansas Law and Practice: Lawyer's Guide to Kansas Evidence § 1:11 (5th ed. 2019).

4

The State did that here. Mendez testified that the video was found on more than one of the seized devices; that several items seen in the video matched things K.L. identified in the photos; and that the tattoo on Father's stomach matched the one in the video. The hand seen in the video had a ring like K.L.'s, was attached to an arm adorned by a red sleeve like K.L.'s pajamas, had a mark on the hand like K.L.'s, and had fingernail polish like K.L.'s. And Mendez also testified that when he interviewed Father and told him that police had a video of these acts, Father said, "'Well, I must have been drunk at the time,'" and "'I made a huge mistake.'" We find no abuse of discretion in the admission of the video.

The district court's judgment is therefore affirmed.