No. 57,242

STATE OF KANSAS, *Appellee*, v. WILLIAM M. LEWIS and RANDY L. RAKESTRAW, *Appellants*.

(708 P.2d 196)

Opinion filed October 25, 1985.

*Edward W. Dosh*, of Parsons, argued the cause and was on the brief for appellant William M. Lewis.

*Mark A. Werner*, of White, O'Connor and Werner, P.A., of Pittsburg, argued the cause and was on the brief for appellant Randy L. Rakestraw.

*Carla J. Stovall*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendants, William M. Lewis and Randy L. Rakestraw, appeal from their convictions for aggravated battery (K.S.A. 21-3414) and aggravated robbery (K.S.A. 21-3427). Both claim that the district court erred when it consolidated their cases for a joint trial and then failed to grant them a new trial when the former county attorney who prosecuted this action did not disclose to defense counsel during trial that his expert chemist would testify contrary to her written report.

While sleeping in his home on the morning of January 14, 1984, Thomas Gardner was awakened by pounding on his door. Opening the door, Gardner recognized one of the two men as Lewis, a fellow employee for whom he had previously procured marijuana and cocaine. The two men forced their way into the house, placed a knife to Gardner's throat and demanded money.

(Lewis wanted to be reimbursed for bad marijuana that Gardner had previously procured for him). When he refused to return any money, Gardner was beaten, pushed to the floor and kicked, and his head was pounded against the wall. During the altercation, Gardner was cut on the arm and had much of his hair pulled out. Gardner was then dragged into a bedroom where money was taken from his billfold and from his roommate's dresser drawer.

Gardner managed to escape and ran to a nearby store where he telephoned the police. Gardner told police he did not know the identity of the individuals who robbed him but gave an accurate description of the two assailants to the officers.

Pittsburg police officers arrested Lewis and Rakestraw approximately 40 minutes after the incident. Gardner then admitted to the police that he knew Lewis. A search warrant was obtained to search Lewis' car. During the search a large buck-type knife belonging to Rakestraw and a clump of hair were found in the car. A smaller buck-type knife was taken from Lewis' pocket.

Prior to their joint trial both defense attorneys filed motions for discovery and inspection. K.S.A. 22-3212. Each requested production of all police reports and any subsequent reports produced during the course of the investigation. In response, the county attorney provided each defense attorney with a laboratory report from the Kansas Bureau of Investigation prepared by Eileen Burnau, a forensic examiner. The report stated that tests performed by the examiner on two jackets taken from the defendants and on a large buck knife found during the search of Lewis' car indicated the victim's blood appeared upon each of the defendant's jackets, but that no blood was detected on the large buck knife.

Prior to trial each defendant admitted to his attorney that he was present in the victim's apartment, that Gardner and Lewis had an argument, that Gardner struck Lewis, that Rakestraw attempted to separate the combatants, and that during the fight Gardner was cut by broken glass which caused blood to be smeared upon their jackets. They claimed that because Gardner was a spiteful man, he was seeking revenge by stating that the defendants had beaten and robbed him.

At trial, each defense attorney in his opening statement to the jury referred to the lack of blood on the buck knife. Each inferred

that if Gardner's story was true, there must be blood on the knife that cut him, and that the State's own expert witness would testify that there was no blood found on the buck knife.

During the trial the State introduced the knife into evidence, claiming it had been used to cut Gardner during the robbery and battery. The State prepared to present its expert witness to the jury. Before testifying, Eileen Burnau, the State's expert witness, informed the county attorney that blood had been found on the knife, and that her written report given to the defendants' attorneys was wrong. The county attorney failed to inform the judge or opposing counsel of this fact. Instead, he had the witness sworn and proceeded with his direct examination. The prosecutor skillfully led his expert witness through her direct testimony, waiting until his last question to the witness to reveal his newly found evidence. He asked the witness the results of her examination of the buck knife. Eileen Burnau testified that her examination of the buck knife showed the presence of blood on the knife! After cross-examination of the expert witness was completed, the surprised defense counsel each requested a mistrial. The court instead ruled to strike the evidence and gave a limiting instruction to the jury that they were to disregard any testimony as to the presence of blood on the knife.

On May 22, 1984, the jury found both defendants guilty of each of the two charges. The defendants now appeal from that decision, raising multiple issues.

The defendants argue that their cases were improperly consolidated for trial because the defendants had antagonistic defenses. Statements made by Rakestraw were contrary to statements made by Lewis. The State contends that the trials of both defendants were properly consolidated into one trial, because each defendant was charged with the same offenses arising from the same set of circumstances.

In *State v. Martin*, 234 Kan. 548, 549-50, 673 P.2d 104 (1983), this court discussed the requirements for joinder, stating that it was subject to a showing of prejudice to either defendant. In determining whether there is sufficient prejudice to mandate severance, a trial court must consider: (1) whether the defendants have antagonistic defenses; (2) whether important evidence admissible in favor of one of the defendants at a separate trial would be allowed in a joint trial; (3) whether evidence incom-

petent as to one defendant and introducible against another would work prejudicially to the former with the jury; (4) if a confession by one defendant is introduced and proved, whether it would prejudice the jury against the others; or (5) whether one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants. 75 Am. Jur. 2d, Trial § 20. See also *State v. Cameron & Bentley*, 216 Kan. 644, 649, 533 P.2d 1255 (1975).

Here both defendants admitted that the altercation occurred, that only one defendant had been involved in the fight and that he had acted in self-defense. None of the grounds requiring the defendants be granted separate trials applies. The district court properly granted consolidation of the two cases.

Defendants claim that they are entitled to a new trial, first, because prosecutorial misconduct occurred when the State failed to disclose to defense counsel how the oral testimony of the State's chemist would differ from her written report, and second, because the testimony of the State's chemist regarding blood found on one of the knives was so inherently prejudicial that it could not be cured by a limiting instruction. The defendants claim that each of these occurrences created a legal defect in the trial which made the convictions by the jury reversible as a matter of law. K.S.A. 22-3423(1)(b).

The granting of a mistrial is a matter within the discretion of the trial court. The judge's power to declare a mistrial is to be used only with great caution, under proper circumstances, to insure that all parties receive a fair trial. To insure that the trial judge has properly applied his discretion in granting or failing to grant a new trial, his actions are subject to review by appellate courts.

It is necessary when justice so requires to declare a mistrial where there is some fundamental failure of the proceeding. When an event of prejudicial misconduct, the damaging effect of which cannot be removed by admonition and instruction, is presented to the jury, the trial judge must declare a mistrial. In the present case, the State's introduction of evidence, of which the defendants' counsel were unaware and which destroyed the defense strategy, is such an event requiring a mistrial.

The defendants claim prosecutorial misconduct. *State v.*

*Thompson*, 221 Kan. 176, 183, 558 P.2d 93 (1976), lists three factors that should be weighed by the reviewing court in determining whether there was prosecutorial misconduct. First, is the misconduct so gross and flagrant as to deny the accused a fair trial (*i.e.*, are the objectionable statements likely to affect the jurors to the defendant's prejudice)? Second, do the remarks show ill will on the prosecutor's part? Third, is the evidence against the defendant of such a direct and overwhelming nature that it can be said that the prejudicial remarks of the prosecutor were likely to have little weight in the minds of the jurors?

Here, defendants claim that all three of these criteria are met. They contend the witness' statements were so prejudicial that they were denied a fair trial, that the introduction of the evidence showed ill will on the part of the prosecutor, and that the evidence against the defendants was not so overwhelming that the prejudicial remarks did not affect the results of the trial. The State claims there was no prosecutorial misconduct. It argues that the evidence was incriminating, rather than exculpatory, and therefore, while the State now admits the prosecutor at trial was remiss in not disclosing it to the defense attorneys, the duty to disclose incriminating evidence is less than the duty to disclose exculpatory evidence.

We agree that prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant, and that the withholding of such evidence is clearly prejudicial to the defendant and a deprivation of rights guaranteed the defendant by the federal Constitution. *Pyle v. Kansas*, 317 U.S. 213, 87 L.Ed. 214, 63 S.Ct. 177 (1942). Here the prosecutor's breach of duty was not failure to disclose incriminating evidence but failure to perform a duty imposed by the legislature. When requested, a prosecutor is required to permit a defendant to inspect and copy the results of the scientific test or experiments made in connection with the particular case which are known, or by the exercise of due diligence may become known, to the prosecuting attorney. K.S.A. 22-3212(1)(b). This he failed to do. Under the facts of this case the county attorney's conduct caused a fundamental failure in the trial process which necessitated the granting of a new trial.

The defendant also argues that while the court issued a limiting instruction concerning the statements by the State's witness,

the fact that the statements were made resulted in such prejudice that no limiting instruction could overcome it. This court has stated a number of times that an admonition to the jury normally cures prejudice from an improper admission of evidence. *State v. Mick*, 229 Kan. 157, 161, 621 P.2d 1006 (1981); *State v. McGhee*, 226 Kan. 698, 702, 602 P.2d 1339 (1979).

In this case, however, both defense counsel had based their defense strategies partially on the belief that the State's expert witness would testify that her examination determined that there was no blood on either knife. In opening statements each defense counsel emphasized this glaring fact to the jury. If Gardner had been cut by a knife, as he claimed, blood would be found on the knife used to attack Gardner. After opening statements were made, during the trial and in the presence of the jury, the State used the corrected report to defeat the defense theory. Such a disclosure could hardly go unnoticed by the jury.

Prosecutorial misconduct occurs when the county attorney fails to disclose to both the trial judge and the defense counsel that he intends to introduce into evidence a report which he failed to inform the defense counsel had been corrected. If the corrected statement changes the theory of defense as presented to the jury in opening statement, then neither admonition nor instructions by the trial judge can cure the resulting prejudice. The trial court abused its discretion when it failed to grant each defendant a new trial. Neither admonition nor instruction by the trial judge could insure that the defendants would receive a fair trial. It was necessary for the judge to protect the defendants' fundamental rights by granting a new trial.

Since this court has granted a new trial to defendants, other issues presented will not be discussed. Resolution of those issues depends upon further proceedings.

The district court is reversed and the case remanded for a new trial.