No. 65,873

STATE OF KANSAS, *Appellee*, v. GARY W. BROWN, *Appellant*.

(823 P.2d 190)

Opinion filed December 6, 1991.

*M. Jennifer Brunetti*, assistant district attorney, argued the cause, and *Gene M. Olander*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

*Wendy L. Rhyne Slayton*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by Gary W. Brown from his convictions of two counts of aggravated criminal sodomy and his sentence to a term of 15 years to life on each count (to run concurrently).

The victims in this case are the 11-year-old son and 8-year-old daughter of Brown's live-in girl friend.

Brown raises five issues on appeal. He alleges the trial court erred in failing to grant him a continuance during the trial, denied him a speedy trial, violated his Fifth Amendment privilege against self-incrimination during the sentencing procedure, abused its discretion in sentencing him, and erred in refusing to order a psychiatric examination of the male child victim.

### 1. Request for a Continuance

After the male child reported Brown's alleged activities to his

mother, she contacted the police. The police took the male child to a hospital where a sexual assault examination was conducted, including the taking of a rectal specimen. Teresa Kocher, a medical laboratory technician, reviewed the gram stain slides of the rectal specimen sent to the lab for testing. Kocher testified that she found a sperm head. She requested that Dr. Roman Hiszczynskyj, a pathologist, confirm her findings. Dr. Hiszczynskyj signed a report noting the existence of "a rare structure highly suspicious of a sperm head."

The slides were misplaced for about 18 months and relocated on June 2, 1990. Dr. Hiszczynskyj reviewed the slides on June 11, 1990, and found no material alterations to them. This time, Dr. Hiszczynskyj concluded that seven sperm heads were present on the slides. Dr. Hiszczynskyj testified that he systematically examined the slides on June 11 because he realized he might be called to testify. When the doctor reviewed one slide in December 1988, he reviewed it simply to confirm Kocher's findings. On the first occasion, he was satisfied with the accuracy of Kocher's findings after he found a couple of sperm heads.

After the State informed the defense of the results of Dr. Hiszczynskyj's June 1990 findings, Brown moved for a continuance. The trial court denied the motion. Brown later moved for a new trial because the trial court did not grant the requested continuance. That motion also was denied.

"The granting of a new trial is a matter of discretion and, as with all discretionary matters, will not be disturbed on appeal except by a showing of abuse of discretion." *State v. Bell*, 224 Kan. 105, 108, 577 P.2d 1186 (1978). K.S.A. 22-3401 provides that "[c]ontinuances may be granted to either party for good cause shown."

" 'The granting or denial of a continuance in a criminal case is a matter [that] rests in the sound discretion of the trial court. Absent a showing of prejudice to the defendant, and an abuse of the court's discretion, the ruling of the court will not be disturbed on appeal.' Discretion is abused only [if] no reasonable [person] would take the view adopted by the trial court; if reasonable [persons] could differ [concerning] the propriety of the action taken by the trial court, then it cannot be said the court abused its discretion." *State v. Galloway*, 238 Kan. 415, 418-19, 710 P.2d 1320 (1985).

If the defendant can show that the trial court abused its discretion in denying the continuance, then it follows that the trial court also abused its discretion in denying the request for a new trial.

Brown argues that because the continuance was denied, the defense was "unable to review the slide[s], review the report, engage a pathologist for the defense, or otherwise prepare a new defense in line with the updated report." As a result, the defendant claims he suffered prejudice in that the defense had to proceed with the planned trial strategy that there was a lack of physical evidence to corroborate the children's stories. In support of his argument, Brown cites to *State v. Lewis,* 238 Kan. 94, 708 P.2d 196 (1985). Brown contends that he suffered the same type of prejudice the *Lewis* defendant suffered.

In *Lewis,* two defendants appealed their convictions of aggravated battery and aggravated robbery. Defense strategy included the absence of blood on the knife allegedly used to stab the victim. In opening statements, defense counsel told the jury that even the State's expert witness would testify there was no blood on the knife. During trial and before the State's expert testified, the expert informed the prosecutor that her written report was incorrect and that there was blood on the knife. The prosecutor did not inform the court or defense counsel of this fact. In fact, the prosecutor saved this "new" evidence until his last question to the expert. The trial court did not grant defense counsel's request for a mistrial; instead, the court told the jury to disregard any evidence regarding blood on the knife.

On appeal, this court reversed and remanded for a new trial, stating:

"Prosecutorial misconduct occurs when the county attorney fails to disclose to both the trial judge and the defense counsel that he intends to introduce into evidence a report which he failed to inform the defense counsel had been corrected. If the corrected statement changes the theory of defense as presented to the jury in opening statement, then neither admonition nor instructions by the trial judge can cure the resulting prejudice." 238 Kan. 94, Syl. ¶ 2.

*Lewis* can be distinguished from the case at hand. Here, there are no allegations of prosecutorial misconduct. The State informed the defendant that the slides had been located. Here, over a week prior to trial, the State told Brown that Dr. Hiszczynskyj

would examine the slides again and that a report would be forth-coming. Upon receipt of the report, the State shared it with the defendant. Additionally, Brown knew before the slides had been located that the State planned to introduce Dr. Hiszczynskyj's initial findings into evidence. The pathologist's June 1990 report was not a reversal of his earlier conclusions. His second viewing of the slides produced a more thorough report, but the report still was consistent with his initial findings.

Without the second report, the evidence would have been that Kocher "found a sperm head" when she viewed one slide and that she "recognized it immediately because it is pretty obvious what it is when you see it." Dr. Hiszczynskyj testified that he also only examined the one slide on the initial examination. He confirmed Kocher had observed a sperm head and he saw "one or two other additional sperm." He testified sperm has a very unique structure and nothing else looks like sperm. Only one of the two slides contained sperm. He also testified the language "a rare structure highly suspicious of a sperm head" is a standard phrase used by professionals in his field.

When Dr. Hiszczynskyj examined the slide immediately prior to trial, he found seven sperm heads. He made a cursory observation when he first examined the slide to confirm Kocher's observation. A more lengthy examination was made in preparation for trial.

Whether Dr. Hiszczynskyj testified there were two or three sperm heads on the slide or seven sperm heads would be of no significance to either the prosecution or the defense. While Dr. Hiszczynskyj's initial report is not as definite as it could have been, knowledge of both Kocher's and Dr. Hiszczynskyj's testimony was available to the defendant in that both were listed as witnesses and available to be interviewed. After the defendant was informed the slides had been located, the defendant made no effort prior to trial to have the slides examined. The argument that the second report changed trial strategy has no merit in view of the information available to the defendant prior to the second report. The trial court did not abuse *its* discretion in denying a continuance and in refusing to grant a new trial.

## 2. Speedy Trial

Brown contends that both his statutory and constitutional rights

to a speedy trial were violated. Concerning his claim that his statutory speedy trial right was violated, Brown was continuously in jail from the date of his arraignment until the date of his trial (94 days). K.S.A. 22-3402 outlines the statutory right to a speedy trial.

"(1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under section (3).

. . . .

(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons: . . . (d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground."

Brown was arraigned on March 9, 1990, and originally scheduled to go to trial on April 23, 1990. At a hearing held on April 17, 1990, the following conversation took place between the trial judge and defense counsel:

"THE COURT: . . . [A]pparently this case is to be continued for other reasons. And, I don't know, did [the Administrative Judge] give you a new trial assignment docket or—

"[DEFENSE COUNSEL]: He didn't, Judge. He asked when the arraignment date was and noticed that there weren't any problems. Then he went back upstairs. So I think he was going to check what kind of time he's got. "THE COURT: Well, I'll just refer it back to the Administrative Judge for rescheduling, then."

At the June 21, 1990, hearing held to consider Brown's motion to dismiss, the parties discussed the reason for the continuance of the April 23, 1990, trial date. Defense counsel informed the court the trial was rescheduled by the administrative judge because the prosecutor had a conflict with another trial. The defendant argues that a four-day violation of his statutory right to a speedy trial occurred.

The State asserts three reasons why there is no statutory speedy trial violation: Brown acquiesced in the granting of the continuance; the court initiated the continuance; and Brown was not in jail solely because of the aggravated criminal sodomy charges.

In *State v. Porter, Green & Smith*, 228 Kan. 345, 353, 615 P.2d 146 (1980), this court stated that in determining a speedy trial violation pursuant to K.S.A. 22-3402, "any period of delay resulting from a continuance granted at the request of the defendant is to be excluded in computing the time for trial under the statute." This philosophy was expanded upon in *State v. Bean*, 236 Kan. 389, 691 P.2d 30 (1984). A defendant, by his or her conduct, may waive the statutory right to a speedy trial. Such conduct includes requesting or even acquiescing in the grant of a continuance. 236 Kan. at 392.

A strong case can be made that defense counsel acquiesced in the rescheduling of the trial. Defense counsel started the machinery in motion by discussing the State's scheduling problems with the administrative judge and did not raise an objection. Defense counsel's actions are attributable to the defendant in computing speedy trial violations. See *State v. Ward*, 227 Kan. 663, 666-67, 608 P.2d 1351 (1980).

The State argues that it did not seek the continuance. The administrative judge continued the case on his own initiative, which the State argues is proper because the trial court has the "[u]ltimate responsibility for management of the trial calendar." See *State v. Higby*, 210 Kan. 554, Syl. ¶ 2, 502 P.2d 740 (1972). The State suggests that this case is similar to *State v. Steward*, 219 Kan. 256, 259, 547 P.2d 773 (1976), in that because of the number of pending trials and the lack of time to try the case, the administrative judge continued the case on his own initiative. 219 Kan. at 259. This court found that the "trial court properly exercised its discretion in entering the continuance." 219 Kan. at 262. Furthermore, a trial court is not required to conduct a formal hearing before granting a continuance under K.S.A. 22-3402(3)(d). 219 Kan. at 262.

We are satisfied from the admissions and statements of defendant's counsel at trial that the administrative judge, in managing the trial docket, continued the case because the number of pending scheduled trials exceeded the State's ability to try them. In addition, defense counsel acquiesced in at least four days of that continuance. Thus, the trial court did not err in holding the defendant's right to a statutory speedy trial was not violated.

Having so held, it is unnecessary to consider the State's argument that the defendant was not being held solely because of the pending charge.

Brown also alleges that his constitutional right to a speedy trial was violated.

"In *Barker v. Wingo,* 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), the United States Supreme Court adopted a case-by-case, flexible approach for determining whether an accused's constitutional right to a speedy trial had been violated:

'A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

'The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' 407 U.S. at 530.

"The court has used the *Barker* analysis on many occasions. See, *e.g.,* *State v. Rosine,* 233 Kan. [663, 664 P.2d 852 (1983)]." *State v. Fitch,* 249 Kan. 562, 563, 819 P.2d 1225 (1991).

The original complaint was filed December 22, 1988, and Brown was taken into custody on February 20, 1990. The record offers little guidance to Brown's whereabouts during this time period. In defendant's motion to dismiss filed June 11, 1990, it was noted that Brown "was arrested and incarcerated for this warrant on November 2, 1989, in Minneapolis, Minnesota. He was subsequently extradited back to the State of Kansas and is currently in custody." In *State v. Chuning,* 199 Kan. 215, 217, 428 P.2d 843 (1967), this court ruled that if the delay in arrest is caused by an accused's absence from the state, the accused is foreclosed from arguing that he has been deprived of his constitutional right to a speedy trial.

We consider only Brown's argument that he was prejudiced because of delay between when he was taken into custody, February 20, 1990, and when the trial began, June 11, 1990. The length of delay is 111 days. In *State v. Goss,* 245 Kan. 189, 193, 777 P.2d 781 (1989), this court said that on the facts of that case, "a little over a year between arrest and trial . . . is not clearly

presumptively prejudicial." The same can be said for this case. "Until there is some delay that is presumptively prejudicial, there is no need to inquire into the other factors." *State v. Fitch*, 249 Kan. 562, Syl. ¶ 3.

The trial court did not err in holding the defendant's constitutional right to a speedy trial was not violated.

### 3. Fifth Amendment Privilege

The defendant's argument is that the trial court considered the fact that the defendant maintained his innocence both in sentencing the defendant and in refusing to modify his sentence. The defendant reasons that his sentence was based, at least in part, on his refusal to incriminate himself.

Prior to pronouncing sentence, the trial court informed the defendant that the court had reconsidered the trial testimony, read the letter defendant wrote to the court, and paid careful attention to the presentence investigation report on the defendant. The court then applied the seven sentencing factors listed in K.S.A. 21-4606 to Brown's case. The trial court set out the facts and factors it took into account in imposing sentence. The court did not discuss the guilt or innocence of the defendant except in terms of the jury's verdict.

The State correctly asserts that there is no evidence the trial court attempted to compel Brown to speak. Brown, through his counsel, was given an opportunity to speak. In fact, defense counsel asked the court to consider that Brown continued to assert his innocence. Brown was not forced to incriminate himself, and his Fifth Amendment privilege against self-incrimination was not violated at the July 16 sentencing hearing.

On October 17, 1990, a hearing was held on Brown's motion to modify his sentence. The trial court listened to witnesses for the defendant and to the State's arguments not to reduce the sentence. The court stated it had carefully reviewed the State Reception and Diagnostic Center (SRDC) report. The court denied the defendant's motion, setting forth the following reasons.

"With respect to the application of the factors under the statute I refer to the facts and circumstances in this case. I do remember the testimony at the trial, I do remember the testimony of the children who at the time of the offense were stepchildren of the defendant's ages 8 and 11 years respectively. After hearing the evidence the jury found the defendant guilty

of both counts and it did so correctly because the evidence showed the defendant guilty of both offenses beyond a reasonable doubt.

"The defendant has no prior convictions but we deal here with an unusually serious offense. A terrible sex offense, several of them, with the defendant's stepchildren. I spoke of this at time of sentencing; no one knows the extreme harm the defendant has caused these two lovely children. It can't be measured and we'll never know that. We only know it is terrible and it can't be undone.

"Of course at sentencing we also look at the case prospectively, how are we going to correct this so it won't happen again. And that's our only goal. And that's just about as bleak as what has already happened. I have studied the defendant's comments, find no remorse, I find no grief, I find no concern for these children, I find concern only for himself and the position in which he now finds himself and that's not the worst of it. The worst of it is the denial that it even happened and I agree totally with the prosecutor we haven't begun with Mr. Brown until Mr. Brown faces the facts as they really are. You might start with that today because that's where you begin and until that process starts, sir, I find that the safety of the public will be jeopardized and your own welfare will not be served by any modification of this sentence. That's my finding today. There is a person who could change it and it's you. So far you've been absolutely disinterested. And that's why public safety doesn't permit you to be at large not even in your own best interests. There could come a time if you make it so that a Court might seriously consider a proceeding like that and that's possible."

At the sentence modification hearing, the State pointed out to the court that the SRDC report recommended Brown receive treatment for sex offenders while he is incarcerated. The SRDC report suggested the treatment might be helpful even though Brown did not admit guilt. The prosecutor added: "I think as the Court is probably well aware in any kind of treatment for this type of offense the very first step is admission that there is some sort of a problem and that still is not evident here."

Brown's claim that his privilege against self-incrimination was violated is not timely. Timeliness was considered in *Roberts v. United States*, 445 U.S. 552, 63 L. Ed. 2d 622, 100 S. Ct. 1358 (1980). The issue was "whether the District Court properly considered, as one factor in imposing sentence, the [defendant's] refusal to cooperate with officials investigating a criminal conspiracy in which he was a confessed participant." 445 U.S. at 553. The defendant insisted

"that he had a constitutional right to remain silent and that no adverse inferences can be drawn from the exercise of that right. We find this ar-

gument singularly unpersuasive. The Fifth Amendment privilege against compelled self-incrimination is not self-executing. At least where the Government has no substantial reason to believe that the requested disclosures are likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion. *Garner v. United States*, 424 U.S. 648, 653-655[, 47 L. Ed. 2d 370, 96 S. Ct. 1178] (1976); *United States v. Kordel*, 397 U.S. 1, 7-10[, 25 L. Ed. 2d 1, 90 S. Ct. 763] (1970); see *United States v. Mandujano*, 425 U.S. 564, 574-575[, 48 L. Ed. 2d 212, 96 S. Ct. 1768] (1976) (opinion of Burger, C.J.); *id.*, at 591-594 (Brennan, J., concurring in judgment)." 445 U.S. at 559-60.

Here, the defendant had been convicted of the offenses by a jury. The trial court was attempting to rehabilitate the defendant and to protect the public. The judge had no reason to believe at that point that the defendant's cooperation with the court services officer or SRDC would be incriminating to the defense.

Because Brown failed to raise this issue at the trial court level, it will not be considered for the first time on appeal.

### 4. Abuse of Discretion

Although Brown acknowledges that aggravated criminal sodomy "is always a heinous offense," he maintains there is no evidence the victims in this case suffered more than any victim of aggravated criminal sodomy suffers. The defendant does not dispute that the court also "mentioned" the statutory factors outlined in K.S.A. 21-4606. Brown argues that the trial court focused too much attention on the nature of the crime when it sentenced him to the maximum time allowed by law.

In support of his argument, Brown relies upon *State v. Linsin*, 10 Kan. App. 2d 681, 709 P.2d 988 (1985), for the proposition "that the sentencing court may not rely solely upon the nature of the crime to overcome the statutory presumption of probation because that disregards the policy of individualized treatment set forth in K.S.A. 21-4601 and 21-4606."

The defendant's reliance upon *Linsin* is misplaced. The Court of Appeals in *Linsin* stated that

"*in order to overcome the statutory presumption of probation in K.S.A. 1984 Supp. 21-4606a*, the sentencing court may not merely rely upon the nature of the crime committed, but must follow the sentencing objectives of K.S.A. 21-4601 and include in the record its consideration of additional sentencing factors as set forth in K.S.A. 21-4606." 10 Kan. App. 2d at 684. (Emphasis added.)

K.S.A. 21-4606a provides the guidelines for presumptive sentences of probation for certain class D or E felonies. Aggravated criminal sodomy is a class B felony. K.S.A. 21-3506(2). There is no statutory presumption of probation in this case; thus *Linsin* is inapplicable.

The general rule is "[a] sentence imposed will not be disturbed on appeal if it is within the limits prescribed by law and the realm of trial court discretion and not a result of partiality, prejudice, oppression, or corrupt motive." *State v. Heywood*, 245 Kan. 615, 617-18, 783 P.2d 890 (1989). Brown only alleges that the trial court abused its discretion.

"Judicial discretion is abused [if] judicial action is arbitrary, fanciful, or unreasonable. Stated another way, discretion is abused only [if] no reasonable person would take the view adopted by the trial court. If reasonable persons could differ [regarding] the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." 245 Kan. at 621.

Brown's sentence was within the limits prescribed by law. The trial court considered the statutory criteria contained in K.S.A. 21-4606, applied them to the facts of this case, and concluded the defendant's conduct warranted the maximum sentence. The trial court did not abuse its discretion.

5. Requested Psychiatric Examination

Brown filed a motion for a psychiatric examination of the male victim approximately two months before trial. The defendant based his request for a psychiatric examination upon a letter written by Dr. Schulman, who had seen the child twice in February 1989 (two months after charges were filed in this case). The doctor commented upon the anger he had seen in the child and also stated that he did not think the child would be a reliable witness if the State went to trial at that time. Additionally, Brown argued that the child had changed the time the last alleged sexual abuse took place and that the child was having trouble in school.

The State pointed out that the child had no trouble testifying at the preliminary hearing on March 9, 1990, some 13 months after Dr. Schulman examined the child. Furthermore, Brown failed to submit any evidence that the child had any kind of

mental illness, any kind of psychosis, or any kind of mental instability.

After studying the preliminary hearing transcript and *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), the trial judge concluded that these circumstances did not warrant a psychiatric examination.

"I believe that the other . . . traditional and standard methods for challenging the credibility . . . of a witness are all in place and are sufficient to, to give the Defendant a fair trial. Further, I think there's some conversations in the case regarding the potential of, of an expert subverting the function of a jury to test the credibility and determine the truth and veracity of witnesses, and that's something that's generally frowned upon.

"So I guess basically the bottom line is that I don't find enough here that would warrant an order to require [a] . . . psychiatric examination, so I'll deny the motion."

In *State v. Gregg*, 226 Kan. at 489, this court held that "a trial judge has the discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination." If a denial of such motion is appealed, the standard of review is whether the trial court abused its discretion. The abuse of discretion standard has been discussed previously.

Brown focuses much of his argument on the following language from *Gregg*:

"The motion for the examination, made the day before trial, rested on such factors as the child's age, the seriousness of the crime, and the lack of corroborating evidence. . . . No facts were stated or evidence introduced as to the child's mental instability, lack of veracity, similar charges against other men proven to be false, or any other reason why this particular child should be required to submit to such an examination." 226 Kan. at 490.

The defendant relies upon trial testimony to prove his case falls within the *Gregg* guidelines. The measure is what evidence the trial court had before it when it acted upon the motion for a psychiatric examination. Here, much of the evidence the defendant relies upon to show abuse of discretion is from the trial transcript. The only evidence presented at the hearing was a report from Dr. Schulman that was approximately a year old (and which is not included in the record on appeal). The defendant presented no testimony that would warrant such an intrusive examination. The child already had testified at the preliminary

hearing, and the trial court did not have sufficient evidence before it for us to say the trial court abused its discretion in refusing to order a psychiatric examination.

Affirmed.