(840 P.2d 529)

No. 66,817

STATE OF KANSAS, *Appellee,* v. MARVIN E. TURLEY, *Appellant.*

Opinion filed October 9, 1992.

*J. Patrick Lawless, Jr.,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Michael C. Hayes,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before LARSON, P.J., LEWIS and PIERRON, JJ.

LARSON, J.: Marvin E. Turley appeals his jury conviction for one count of aggravated battery in violation of K.S.A. 21-3414, contending he was denied his Sixth Amendment rights to a fair and impartial jury and to confront witnesses when a member of the jury did not disclose during voir dire that he knew both Turley and one of the witnesses, Penny Rummel. Turley also contends the trial court erred during sentencing by ruling K.S.A. 1991 Supp. 21-4618(3) was not applicable to his situation.

Turley and Rick Nott fought in September of 1990, at which time Nott stated he would get Turley every time he saw him. On December 12, 1990, Turley again became involved in an altercation with Nott outside Richard's Tavern in Holton. As Nott and a companion, who was holding a tire iron, approached Turley and his companions, Turley fired a .22 caliber handgun at Nott. Nott ran, then later determined he had been shot in the side

near the back of his armpit. Turley was charged with aggravated assault and aggravated battery.

During voir dire, the State asked the jury panel whether any member knew Turley and several other individuals listed as potential witnesses, including Penny Rummel. No member of the jury panel indicated he or she knew either Turley or Rummel. The jury was selected and the case proceeded to trial.

Following the State's case in chief, the trial court dismissed the aggravated assault charge, ruling it had merged with the aggravated battery charge. After deliberation, the jury found Turley guilty of aggravated battery.

Turley moved for new trial based upon alleged juror misconduct. Turley contended presiding juror Rickland Ford knew both him and Rummel and did not provide this information during voir dire. Attached to the motion was an affidavit prepared by Rummel. Rummel stated Ford knew Turley because Ford was the son of the owner of Richard's Tavern where Turley worked as a bartender. Rummel stated both Ford and Turley cleaned the Tavern. Rummel stated Ford knew her because she used to date his brother and Ford would come over to their residence and they would sit and talk.

Turley and Rummel both testified during the hearing on the motion for new trial. Rummel's testimony basically followed her affidavit. Turley testified he worked at Richard's Tavern, owned by Ford's father, and that he and Ford talked in the tavern on several different occasions while he was working or while Ford was working.

The trial court denied Turley's motion, finding the jury panel had been informed it was not a question of knowing someone, but it was a question of whether by reason of that knowledge or knowing someone the potential juror would be unable to be fair or unbiased. The trial court noted many questions were asked concerning whether a prospective juror knew or had any reason to know that he or she could not be fair in the case. The trial court stated: "It was correctly pointed out the fact that you know somebody doesn't preclude you as sitting as a juror and in that person's case or a case involving that person." The trial judge concluded Turley had not shown he was prejudiced or that Ford was biased in any way.

The trial court sentenced Turley in accordance with K.S.A. 1991 Supp. 21-4618 because a firearm was used by him in the commission of the crime. The trial judge stated, "There's nothing to indicate that [K.S.A. 1991 Supp. 21-4618] doesn't apply under the circumstances of this case." The trial court imposed a minimum sentence of 3 to 10 years pursuant to K.S.A. 21-4501(c).

Turley appeals. We affirm.

*Was Turley denied his Sixth Amendment rights to a fair and impartial jury and to confront witnesses when a member of the jury did not disclose during voir dire that he knew both Turley and Rummel?*

Turley contends he is entitled to a new trial based upon Ford's misconduct during voir dire in failing to reveal that he knew both Turley and Rummel when asked by the State. Turley argues that Ford knew him and Rummel was a material fact under K.S.A. 22-3413, cast a doubt on whether Ford could act impartially, and under K.S.A. 22-3410(2)(i) rendered Ford unfit to serve as a juror. Turley asserts Ford was in a position to know the background of this case, including having an intimate knowledge of the parties, and the sharing of this information during deliberations unduly influenced the other jurors and denied him his Sixth Amendment right to confront the witnesses against him. Turley argues Ford's response to the question asking if Ford knew him or Rummel was critical to his decision whether to exercise either a peremptory challenge or a challenge for cause against Ford.

K.S.A. 22-3501(1) provides that on a motion the trial court may grant a new trial to a defendant if required in the interest of justice. In *State v. Brown,* 249 Kan. 698, Syl. ¶ 1, 823 P.2d 190 (1991), our Supreme Court stated: "The granting of a new trial is a matter of trial court discretion and, as with all discretionary matters, will not be disturbed on appeal except by a showing of abuse of that discretion."

"Judicial discretion is abused if judicial action is arbitrary, fanciful, or unreasonable. Stated another way, discretion is abused only if no reasonable person would take the view adopted by the trial court. If reasonable persons could differ regarding the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" 249 Kan. 698, Syl. ¶ 10.

K.S.A. 22-3423(1)(e) provides that a trial court may order a mistrial at any time it finds termination necessary because "[f]alse statements of a juror on *voir dire* prevent a fair trial." K.S.A. 22-3413 states: "If a juror has personal knowledge of any fact material to the case, he must inform the court and shall not speak of such fact to other jurors out of court." K.S.A. 22-3410(2)(i) provides that a prospective juror may be challenged for cause if: "His state of mind with reference to the case or any of the parties is such that the court determines there is doubt that he can act impartially and without prejudice to the substantial rights of any party."

Basically, the purpose of voir dire examination is to enable parties to select jurors competent to judge and determine facts in issue without bias, prejudice, or partiality. *State v. Guffey,* 205 Kan. 9, 13, 468 P.2d 254 (1970). Arguably, if Ford did know both Turley and Rummel, his failure to disclose this knowledge when asked by the State during voir dire amounts to misconduct. However, "[j]uror misconduct in civil and criminal cases is not a ground for reversal, new trial, or mistrial unless it is shown to have substantially prejudiced a party's rights. The party claiming prejudice has the burden of proof." *State v. Cady,* 248 Kan. 743, 756, 811 P.2d 1130 (1991).

In the instant case, there has been no evidence offered to show that Ford's acquaintance with Turley and Rummel prevented a fair trial, other than the general allegation by Turley. Nothing in the record indicates prejudicial misconduct by Ford. The record does not support Turley's allegation that Ford used his knowledge of the parties or the background of the case during deliberations, or that Ford influenced the other 11 jurors.

Although it was not argued, Turley knew Ford and it may be assumed that he believed this to be to his advantage. A litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal. *State v. Prouse,* 244 Kan. 292, 298-99, 767 P.2d 1308 (1989). Turley never objected to Ford serving as a juror until after the unfavorable jury verdict.

The trial court did not abuse its discretion in finding Turley had failed to show substantial prejudice to his rights and in de-

nying Turley's motion for new trial. Reasonable persons could agree with the trial court.

*Did the trial court err during sentencing by ruling K.S.A. 1991 Supp. 21-4618(3) did not apply?*

K.S.A. 1991 Supp. 21-4618 provides:

"**Mandatory imprisonment for crimes involving firearms.** (1) Except as provided in subsection (3), probation, assignment to a community correctional services program or suspension of sentence shall not be granted to any defendant who is convicted of the commission of the crime of rape, the crime of aggravated sodomy or any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated in which the defendant used any firearm in the commission thereof and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime. This section shall not apply to any crime committed by a person under 18 years of age.

"(2) When a court has sentenced a defendant as provided above, the court shall state in the sentencing order of the judgment form or journal entry, whichever is delivered with the defendant to the correctional institution, that the defendant has been sentenced pursuant to this K.S.A. 21-4618 and amendments thereto based on a finding by the court that a firearm was so used.

"(3) The provisions of this section shall not apply to any crime committed by a person where such application would result in a manifest injustice."

The trial court found Turley used a firearm in the commission of the aggravated battery against Nott and, following the mandate set forth in K.S.A. 1991 Supp. 21-4618, imposed the minimum sentence of 3 to 10 years. See K.S.A. 21-3414; K.S.A. 21-4501(c). Under 21-4618, imposition of the minimum statutory sentence is mandatory upon a finding by the sentencing court that a firearm was used in the commission of an article 34 offense. *State v. DeCourcy,* 224 Kan. 278, 280, 580 P.2d 86 (1978). "The sole purpose of K.S.A. 21-4618 is to insure that at least the minimum sentence be imposed by a judge to deter the use of a firearm by an individual in the commission of the specified crimes." *State v. Keeley,* 236 Kan. 555, Syl. ¶ 4, 694 P.2d 422 (1985).

"A sentence imposed will not be disturbed on appeal if it is within the limits prescribed by law and the realm of trial court discretion and not a result of partiality, prejudice, oppression, or corrupt motive." *Brown,* 249 Kan. 698, Syl. ¶ 9.

Turley contends the trial court erred by ruling K.S.A. 1991 Supp. 21-4618(3) did not apply and by imposing a manifestly

unjust sentence. Turley asserts that had the trial court considered the sentencing factors set forth in K.S.A. 21-4606(c), (d), (e), and (f) it would have been left with no choice but to conclude K.S.A. 1991 Supp. 21-4618(3) applied in this situation.

K.S.A. 21-4618(3) was enacted by our legislature in 1989. L. 1989, ch. 92, § 26. Turley calls into question what the legislature intended by enacting subsection 3. Our research reveals no legislative history regarding what situations were intended to represent "manifest injustice" so as to prevent application of mandatory imprisonment for crimes involving firearms.

According to *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 1, 829 P.2d 561 (1992): "Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained."

We have not yet developed any body of law where mandatory imprisonment because of use of a firearm has not been imposed because it would represent "manifest injustice" to do so. *Balagna v. Van Doren-Hazard-Stallings*, 11 Kan. App. 2d 357, 720 P.2d 1144 (1986), which addressed "manifest injustice" in the context of a civil discovery statute requiring a party seeking discovery to pay an expert a reasonable fee for time spent in responding to discovery unless manifestly unjust, is not helpful in resolving this question.

In *Lloyd v. State*, 672 P.2d 152 (Alaska App. 1983), the Alaska Court of Appeals was required to determine the meaning of "manifest injustice" in the context of that state's presumptive sentencing scheme. Lloyd was subject to a six-year presumptive term because he used a gun in the commission of the robbery. 672 P.2d at 153. The sentencing judge rejected Lloyd's request for referral to a three-judge sentencing panel, finding he had failed to establish that manifest injustice would result from imposition of an adjusted presumptive term. 672 P.2d at 154.

The Alaska Court of Appeals affirmed, opining that manifest injustice is basically a subjective standard, and that accurate and permissible characterizations of the manifest injustice standard were obvious unfairness and shocking to the conscience. 672 P.2d

at 154. The court stated: "Individual sentencing judges will, no doubt, differ in their views as to when manifest injustice has been shown." 672 P.2d at 155.

No abuse of discretion has been shown by the trial court's determination that K.S.A. 1991 Supp. 21-4618(3) did not apply to Turley's situation. The 3- to 10-year sentence imposed is not obviously unfair nor does it shock the conscience. Although the trial judge did not expressly state on the record that he was considering the sentencing objectives of K.S.A. 21-4601 and the sentencing factors set forth in K.S.A. 21-4606, it is apparent from reading the sentencing transcript the trial court did consider the sentencing factors, the public safety, Turley's needs, and the seriousness of Turley's crime when concluding K.S.A. 1991 Supp. 21-4618(3) did not apply.

The trial court stated:

"The evidence in this case was that you had consumed a substantial amount of alcohol that night on a number—Well, everybody involved in this case really had been drinking pretty heavily.

"It's unfortunate, Mr. Turley, in view of your record—your record is not the record of a bad man. You're not charged with being a bad person. You've got a history of contact with the court system but it all involves insufficient fund checks and/or driving offenses. That doesn't make you a bad person at all. But we can't have people going around taking the law in their own hands. There are ways to avoid or prevent people from threatening or beating up on us. None of those steps were taken by you. If your concerns were so strong about Mr. Nott that you were in fear you should have gone to see Mr. Hayes [Jackson County Attorney] long before this incident occurred.

"K.S.A. 21-4618 requires imposition of the minimum sentence in this case by reason of the use of a firearm, and the Court specifically hereby finds from the evidence presented to the jury in this case that a firearm was used by you in the commission of the crime of which you were convicted. . . .

"In view of your record I think you're entitled to have the minimum imposition sentence imposed that the law allows and that's what I'm going to do. I'm not going to impose a maximum sentence on you, Mr. Turley.

"In a civilized society there has to be—we have to resolve our differences in a manner other than by resorting to fighting and firearms. You have to learn how to do that, and excessive drinking doesn't lend itself to resolving disputes as reasonable people should resolve disputes. It only aggravates the situation."

Reasonable persons could agree with the trial court. It was not manifest injustice to impose mandatory imprisonment for using a firearm during an altercation.

Affirmed.