NOT DESIGNATED FOR PUBLICATION

No. 125,457

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

UNDRA D. LEE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed November 9, 2023. Affirmed.

*David L. Miller*, of The Law Office of David L. Miller, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., PICKERING, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Undra D. Lee—who is incarcerated after being convicted in 1995 of first-degree murder, aggravated kidnapping, kidnapping, and aggravated assault—appeals the district court's summary dismissal of his third motion for habeas corpus relief under K.S.A. 2022 Supp. 60-1507. Lee contends that the district court erred in dismissing his K.S.A. 60-1507 motion as untimely because he raised a colorable claim of actual innocence based on an affidavit signed by his uncle who was a codefendant in the underlying criminal case. Finding Lee's arguments unpersuasive, we affirm the district court's summary dismissal of Lee's third K.S.A. 60-1507 motion.

1

On September 15, 1995, a jury convicted Lee of first-degree murder, aggravated kidnapping, kidnapping, and aggravated assault. The district court sentenced Lee to a life sentence for the first-degree murder conviction and a life sentence for the aggravated kidnapping conviction. He was sentenced to at least three years but not more than ten years for the aggravated assault conviction, and to at least fifteen years to life for the kidnapping conviction. The district court ordered each of these sentences to run consecutive to each other.

The Kansas Supreme Court affirmed Lee's convictions on direct appeal. *State v. Lee*, 263 Kan. 97, 114, 948 P.2d 641 (1997). In doing so, our Supreme Court set out a detailed summary of the underlying facts leading to his convictions:

"On May 31, 1994, human bones were found in a field in rural Sedgwick County. The remains were identified as those of Marqueta Smallwood, who had disappeared in 1993. The coroner concluded she had died as a result of multiple gunshot wounds.

"When the facts are viewed as we are required to view them on appeal, they show the following: Lee ran a drug operation out of the home of Allen Brooks. [Smallwood] owed Lee drug money. Lee, James C. Sanders (Lee's uncle), and Glenn Whistnant went to Steven Alexander's home, and Sanders and Whistnant forcibly removed [Smallwood]. Sanders put a gun to Alexander's head and backed out of the home with Alexander in tow. (The kidnapping charge arose from this incident.) Roselyn Surratt, a friend of [Smallwood]'s, was a resident of the Alexander home and was present when [Smallwood] and Alexander were removed from the home. (The aggravated assault charge arose from threats made to Surratt during this incident.) The aggravated kidnapping and first-degree murder charges arose because [Smallwood] was forcibly taken from Alexander's home and killed.

"[Smallwood] was taken to Brooks' home, forced to disrobe, and questioned intensely for some 2 hours. Before being taken from the Alexander home, [Smallwood] admitted she had taken the drug money and said, "You might as well go on ahead and kill

me." She was told, "That wouldn't be any problem." While at Brooks' home, Lee was angry, and [Smallwood] was upset and crying and requesting that she not be killed.

"[Smallwood] was next taken to the field where her remains were ultimately located. In the field, another long conversation took place concerning the drug money. Lee then gave [Smallwood] permission to walk home. When she had walked some 150 yards away from Lee, Sanders, and Whistnant, Lee sent Sanders to bring her back.

"Sanders testified that Lee had been discussing shooting [Smallwood]. Whistnant testified Lee had told him he was going to 'waste [Smallwood].' Lee tried to get Whistnant to shoot [Smallwood], but Whistnant refused.

"After further discussion concerning the missing drug money, [Smallwood] again requested that she not be killed. Lee shot her and [Smallwood] fell down. Lee then walked up to [Smallwood] as she lay on the ground and shot her again." 263 Kan. at 98-99.

In 2008, Lee filed his first K.S.A. 60-1507 motion claiming ineffective assistance of trial counsel. The district court summarily dismissed the motion as untimely, and a panel of this court affirmed the dismissal on appeal. See *Lee v. State*, No. 101,277, 2010 WL 198503, at *1 (Kan. App. 2010) (unpublished opinion). In 2014, Lee filed a second K.S.A. 60-1507 motion asserting multiple trial errors including jury instruction errors and a claim of prosecutorial misconduct. See *Lee v. State*, No. 113,868, 2016 WL 7324383, at *1 (Kan. App. 2016) (unpublished opinion). Finding that Lee failed to establish manifest injustice, failed to present claims for which relief could be granted, and made conclusory allegations, the district court summarily dismissed the motion. Again, a panel of this court affirmed the dismissal. 2016 WL 7324383, at *1-3.

On June 15, 2021, Lee filed a third K.S.A. 60-1507 motion, which is the subject of this appeal. In his pro se motion, Lee challenged his convictions for aggravated kidnapping, aggravated assault, and kidnapping. He did not, however, challenge his first-degree murder conviction. Lee attached an affidavit to the motion signed by his uncle and codefendant—James Sanders—who was also convicted of crimes arising out of the 1995 incident involving Smallwood. According to Lee, his uncle's affidavit proved that he was

3

actually innocent of the aggravated kidnapping, aggravated assault, and kidnapping charges.

In his affidavit, Lee's uncle alleged that because Lee waited in the car while he and Whistnant went inside Alexander's house to confront Smallwood, Lee did not know what happened inside. On October 27, 2021, after reviewing the motion, affidavit, and court records, the district court summarily dismissed Lee's K.S.A. 60-1507 motion. In its written order, the district court found that the motion was untimely filed and that Lee had not met his burden to show that it was more likely than not that no reasonable jury would have convicted him in light of the purported new evidence discussed in the uncle's affidavit. The district court further found that the remainder of Lee's claims—which are not material to the issue presented in this appeal—were conclusory and did not establish manifest injustice.

Thereafter, Lee appealed to this court.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in summarily dismissing Lee's third K.S.A. 60-1507 motion. As indicated above, Lee challenges his aggravated kidnapping, kidnapping, and aggravated assault convictions in his motion but he does not challenge his first-degree murder conviction. On appeal, Lee contends that the district court erred in summarily dismissing his motion as untimely because he raised a "gateway claim of actual innocence" that was sufficient to establish the manifest injustice required to justify his untimely motion. Lee also suggests that his claim of actual innocence constitutes exceptional circumstances to justify the successive nature of his motion.

4

In response, the State contends that Lee has not made a colorable claim of actual innocence based on the contents of his uncle's affidavit. The State also asserts that nothing in the affidavit constitutes new evidence. Specifically, the State argues that nothing in the uncle's affidavit conflicts in any meaningful way—if at all—with the testimony he gave at the trial of the underlying criminal case. Consequently, the State argues that Lee has neither established manifest injustice nor exceptional circumstances to justify the filing of his untimely and successive third K.S.A. 60-1507 motion.

When—as here—a district court has summarily dismissed a K.S.A. 60-1507 motion, we conduct a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). It is undisputed in this case that Lee's motion was untimely. But a court may extend the filing deadline "to prevent a manifest injustice." K.S.A. 2022 Supp. 60-1507(f)(2).

The term "manifest injustice" has not been defined in the context of filing a K.S.A. 60-1507 motion. However, this court has defined it in other contexts as meaning "obviously unfair" or "shocking to the conscience." *Ludlow v. State*, 37 Kan. App. 2d 676, 686, 157 P.3d 631 (2007) (quoting *State v. Turley*, 17 Kan. App. 2d 484, Syl ¶ 2, 840 P.2d 529 [1992]). Absent a showing of such unfair or shocking conduct rising to the level of manifest injustice, a district court is statutorily obligated to dismiss a K.S.A. 60-1507 motion as untimely if—after inspection of the motion, files, and records of the case—it determines that the deadline for filing has expired. K.S.A. 2022 Supp. 60-1507(f)(3).

K.S.A. 2022 Supp. 60-1507(f)(2)(A) further describes the applicable manifest injustice analysis as follows:

"For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner *in light of new evidence*." (Emphasis added.)

The Kansas Supreme Court has found that the actual innocence exception is narrow and only satisfied in extraordinary cases. *Beauclair*, 308 Kan. at 302 (citing *Schlup v. Delo*, 513 U.S. 298, 321, 115 S. Ct. 851, 130 L. Ed. 2d 808 [1995]). In *Beauclair*, our Supreme Court found that to determine whether a reasonable juror would have convicted the movant in light of new evidence, all the evidence—independent of the rules of admissibility, including potentially the credibility of trial witnesses—must be considered. *Beauclair*, 308 Kan. at 300-01 (adopting standard from *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 [1986] and its progeny and quoting *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 [2006]).

As another panel of our court explained, the court's role is to:

"evaluate whether the new evidence presents specific facts that are not contradicted by the record and then, if so, to evaluate whether the new evidence, considered in light of all the evidence at trial, would support a conclusion that [the inmate] has met the actual innocence test—the caveat being that the district court must assume the new evidence is true when determining whether to conduct an evidentiary hearing." *Skaggs v. State*, 59 Kan. App. 2d 121, 137, 479 P.3d 499 (2020) (citing *Hogue v. Bruce*, 279 Kan. 848, Syl. ¶ 1, 113 P.3d 234 [2005]).

In *Beauclair*, our Supreme Court held that a rape victim's recantation and the movant's explanation about why he made a false confession were sufficient to establish a colorable claim of actual innocence and, thus, manifest injustice. *Beauclair*, 308 Kan. at 284-85. Similarly in *Skaggs*, the panel found that the movant established a colorable

claim of actual innocence sufficient to warrant an evidentiary hearing by presenting a follow-up exam report from a doctor, follow-up exam photographs in support of the report, and an affidavit from the doctor that directly contradicted evidence presented at trial in a sexual assault case. 59 Kan. App. 2d at 144-45. Here, we find that the affidavit signed by Lee's uncle does not rise to the level of establishing a colorable claim of actual innocence.

In the affidavit, Lee's uncle admits that he and Whistnant went to Alexander's residence to tell Smallwood that Lee wanted to speak to her about the money she owed him. He then states that the actions he and Whistnant took once inside Alexander's house stemmed from an argument that ensued between Whistnant and Smallwood. Furthermore, he states that Lee was unaware of what occurred inside Alexander's house and that he was "totally innocent" of the aggravated kidnapping, aggravated assault, and kidnapping charges.

It is important to recognize that Lee was convicted of aggravated kidnapping, kidnapping, and aggravated assault under an "aiding and abetting" theory. As a result, it was immaterial whether Lee had actual knowledge of what his uncle and Whistnant were doing inside the house while he waited inside the car. Under an aiding and abetting theory, the State had to prove that Lee "knowingly associate[d] with the unlawful venture and participate[d] in a way which indicates that [he was] facilitating the success of the venture." *State v. Hobson*, 234 Kan. 133, 138, 671 P.2d 1365 (1983).

A review of the record of the underlying criminal case reveals that the jury was properly instructed as follows:

> "A person who intentionally, aids, abets, advises, hires, counsels and/or procures another to commit a crime is also responsible for any other crime committed in carrying

out or attempting to carry out the intended crime, if the other crime was reasonably foreseeable.

> "A person who, either before or during its commission, intentionally aids, abets, advises, hires, counsels and/or procures another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

In other words, the State was not required to prove that Lee personally committed the aggravated kidnapping, kidnapping, and aggravated assault but only that there was sufficient evidence presented upon which a jury could find him guilty beyond a reasonable doubt of aiding and abetting in the commission of these crimes.

We do not find that the statements made by Lee's uncle in his affidavit constitute new evidence or a colorable claim of actual innocence. First, the statements in the affidavit do not meaningfully conflict with Sanders' testimony in the trial of the underlying criminal case. Rather, his affidavit reaffirms his testimony that he went to Alexander's house to find Smallwood at Lee's direction. At trial, Sanders testified that Lee told him to find Smallwood because he "wanted to talk to her." Similarly, in his affidavit, Sanders states that he and Whistnant went to the house to tell "Smallwood that Undra Dawain Lee wanted to speak with her about the money she owed."

Sanders has consistently testified that he, Lee, and Whistnant went to Alexander's house together in an attempt to find Smallwood. Likewise, he has consistently testified that Lee waited in the car as he and Whistnant went into Alexander's house looking for Smallwood. Moreover, Sanders has consistently stated that after Smallwood was removed from the house, she was taken to the car in which Lee was waiting. Thus, both Sanders' trial testimony and the statements in his affidavit both link Lee to the events that resulted in the aggravated kidnapping, kidnapping, and aggravated assault charges.

We do note one difference between the statements in Sanders' affidavit and his testimony at trial. Specifically, it does not appear that Sanders mentioned an argument between Whistnant and Smallwood when he testified at trial. Rather, he simply testified at trial that he thought Smallwood walked out of Alexander's house willingly. However, in Lee's direct appeal, our Supreme Court found that "Sanders and Whistnant forcibly removed" Smallwood from the house and reiterated that she "was forcibly taken from Alexander's home and killed." *State v. Lee*, 263 Kan. at 98. Regardless, we do not view this difference to be material to the outcome of this appeal because—as discussed above—Lee was convicted of aggravated kidnapping, kidnapping, and aggravated assault under an "aiding and abetting" theory.

Our review of the record also reveals that Sanders was not the only witness whose trial testimony linked Lee to the aggravated kidnapping, kidnapping, and aggravated assault charges. Detective Jackie Stuart testified that Sanders told her that he and Whistnant took Smallwood at gun point from the house at the direction of Lee. Also, Whistnant testified that Lee told him to go inside Alexander's house and tell Smallwood that he wanted to "holler at her." Likewise, Whistnant and Sanders both testified at trial that after they brought Smallwood to the car where Lee was waiting, they heard him question her multiple times about the money she allegedly owed to him for drugs. In addition, Vanessa Miller—who admitted that she sold drugs for Lee—testified that he told her that Smallwood owed him about $1,000 and that on the night she was murdered, Smallwood had asked her to help pay back money to Lee.

Applying the *Beauclair* analysis to Lee's claim of actual innocence, we find that he has not met his burden of demonstrating that no reasonable juror would have convicted him in light of the statements set forth in Sander's affidavit. *Beauclair*, 308 Kan. at 303-04. The State has never alleged that Lee physically committed all the actions leading to the aggravated kidnapping, kidnapping, and aggravated assault charges, and the record is replete with evidence that demonstrates his involvement and direction in aiding and

9

abetting in the commission of these crimes. The jury convicted Lee—and our Supreme Court affirmed his convictions—based on such evidence and we do not find that anything in Sanders' affidavit would change this outcome.

The evidence at trial overwhelmingly shows that on the night that Lee shot and killed Smallwood in a field, he first directed Sanders and Whistnant to locate her and to bring her to him because she owed him drug money. We note that Lee also attempts to argue that there were erroneous jury instructions given in the underlying criminal trial. But the alleged erroneous instructions do not constitute new evidence as required to establish a claim of actual innocence. See K.S.A. 2022 Supp. 60-1507(f)(2)(A). As such, we conclude that the district court did not err in determining that Lee failed to make a colorable claim of actual innocence in his third K.S.A. 60-1507 motion. Consequently, the district court was not required to hold an evidentiary hearing on the motion under K.S.A. 2022 Supp. 60-1507(b).

Furthermore, even if Lee had been able to establish a claim of actual innocence, his third K.S.A. 60-1507 motion would also be subject to summary dismissal on the ground that it is successive under K.S.A. 2022 Supp. 60-1507(c). As the parties are aware, a district court is not required to entertain a second or successive motion for similar relief on behalf of the same inmate. *State v. Mitchell*, 315 Kan. 156, 160, 505 P.3d 739 (2022). See also Supreme Court Rule 183(d) (2023 Kan. S. Ct. R. at 243). Moreover, movants are presumed to have listed all grounds for relief in their direct appeals or in their initial K.S.A. 60-1507 motion. Hence, a movant "must show exceptional circumstances to justify the filing of a successive motion." *Mitchell*, 315 Kan. at 160.

Exceptional circumstances are unusual events or intervening changes in the law that prevented the movant from reasonably being able to raise the issue in the first postconviction motion. 315 Kan. at 160. Such circumstances can include ineffective assistance of counsel claims and a colorable claim of actual innocence based on new

10

evidence. See *Beauclair*, 308 Kan. at 304 (colorable claim of actual innocence); *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009) (ineffective assistance of counsel). In determining whether exceptional circumstances exist, courts must "factor[] in whether justice would be served by doing so." *Littlejohn v. State*, 310 Kan. 439, 446, 447 P.3d 375 (2019).

Although the district court did not dismiss Lee's third K.S.A. 60-1507 motion as successive, it is undisputed that he has previously filed two K.S.A. 60-1507 motions. The issues raised in his third K.S.A. 60-1507 motion were already raised or could have been raised in his prior motions. See *Lee*, No. 2010 WL 198503, at *l; *Lee*, 2016 WL 7324383, at *l. Further, as discussed above, Lee has not established a colorable claim of actual innocence sufficient to show either manifest injustice or exceptional circumstances. Thus, we conclude that Lee's third K.S.A. 60-1507 motion is successive and was appropriately dismissed by the district court.

In conclusion, because Lee has failed to establish a colorable claim of actual innocence, we find that his third K.S.A. 60-1507 motion is barred on the grounds that it is both untimely and successive. Accordingly, we conclude that the district court did not err by summarily dismissing his substantive claims without an evidentiary hearing. We, therefore, affirm the district court's decision.

Affirmed.